CARLTON, J., for the Court:
¶ 1. Thomas Watts filed for a divorce from his wife, Kimberly Watts, on July 9, 2008. After a trial held in the Harrison County Chancery Court, the chancellor granted the parties an irreconcilable-differences divorce. The chancellor awarded Kimberly one-half of the marital assets, and he also awarded attorney’s fees to Kimberly. The chancellor awarded the parties joint physical and legal custody of the parties’ minor son, Trevor Watts. Thomas now appeals, claiming the chancellor erred in awarding joint legal and physical custody of Trevor and also erred in awarding alimony and attorney’s fees to Kimberly. Finding no error, we affirm the chancellor’s judgment.
FACTS
¶ 2. Thomas and Kimberly were married on May 4, 1996. Thomas worked as a certified nurse anesthetist, and Kimberly worked as a registered nurse. The marriage produced one child, Trevor, born on August 21, 1996. Prior to the marriage, Thomas entered into a rehabilitation program for prescription drug abuse. During his recovery, Thomas met Kimberly, who worked with him in his recovery process.
¶ 8. In December 2006, Thomas began exhibiting abnormal and distant behavior. After inquiries by his coworkers about his behavior, Thomas again entered into an inpatient drug rehabilitation program, and he self-reported to a doctor for abusing prescription drugs. Thomas consequently took a leave of absence from his job as a nurse anesthetist. During this time, Kimberly returned to full-time work to supplement the family’s income while also assisting in providing care for her ailing father. Kimberly also had surgery to remove an ovary. Following his completion of the rehabilitation program in January 2007, Thomas enrolled in the Nursing Recovery Program.
¶ 4. After Thomas’s release from the rehabilitation program, he and Kimberly began experiencing problems in their marriage. Kimberly suffered the loss of her father in October 2007. In July 2008, the parties engaged in an argument that escalated into a charge of domestic abuse against Kimberly. Thomas obtained an ex-parte temporary restraining order (TRO) for emergency relief and filed an affidavit in support of the TRO claiming Kimberly was a danger to herself and others. Kimberly filed no pleadings challenging the propriety of the TRO. The TRO granted Thomas temporary custody of Trevor, appointed a guardian ad litem (GAL) to represent Trevor’s best interest, and set a hearing for July 22, 2008. The chancellor ultimately determined the affidavit was not substantially true in material aspects, and he also found that Kimberly had not posed a danger to herself or others at the time the affidavit was signed. Thomas and Kimberly finally separated on July 5, 2008.
¶ 5. On July 22, 2008, the parties agreed to an order for temporary relief, which appointed a new GAL; provided for supervised visitation between Trevor and Kimberly, pending the GAL’s interim report; and ordered the parties and Trevor to undergo psychological and psychiatric evaluations. Thomas, Kimberly, and Trevor all met separately with the doctors and the GAL, who recommended a specific unsupervised visitation schedule for Trevor with Kimberly. The chancellor entered a First Amended Order for Temporary Re *756 lief and Consolidation, setting up a specific visitation schedule.
¶ 6. After the trial held on March 2-5, 2009, Thomas and Kimberly voluntarily consented to the divorce on the ground of irreconcilable differences. The chancellor awarded Thomas and Kimberly joint legal and physical custody of Trevor. The chancellor also awarded $15,000 in attorney’s fees to Kimberly, and he ordered Thomas to pay Kimberly $1,000 per month in alimony.
¶ 7. Following the entry of the final judgment, Thomas filed a Rule 59(e) motion to set aside, alter, or amend the final judgment. See M.R.C.P. 59(e). On July 13, 2009, Thomas filed an amended Rule 59(e) motion and also a Rule 60 motion to set aside, alter, or amend the final judgment, to reopen the evidence and/or for a new trial. See M.R.C.P. 60. On November 18, 2009, Thomas filed an amended and supplemental motion under Rule 59(e) and Rule 60, as well as a motion for modification of the judgment. On December 7, 2009, Thomas filed a motion for findings of fact and conclusions of law regarding the Rule 59 and Rule 60 motions. Following a hearing, the chancellor issued an order denying the motions. Thomas now appeals.
STANDARD OF REVIEW
¶ 8. “Chancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record.” Henderson v. Henderson, 757 So.2d 285, 289 (¶ 19) (Miss. 2000). “The Court will not disturb the findings of a [cjhancellor unless the [c]han-cellor was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied.” Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990).
DISCUSSION
I. Albright Factors
¶ 9. Thomas argues that the chancellor abused his discretion regarding his findings and application of the Albright[1] factors. Thomas cites to Taylor (Rodgers) v. Taylor, 755 So.2d 33, 38 (Miss.Ct.App.1999) in support of his claims that the chancellor made “quantum leaps” to reach “reckless” punitive findings, “revealing a bias leading to an abuse of discretion.” Thomas claims that without any supporting evidence, the chancellor made the following findings of fact: Thomas “set [Kimberly] up”; Thomas “play[ed] Trevor against [Kimberly]”; Thomas “manipulated Trevor’s relationship with [Kimberly]”; Thomas “destroyed Trevor’s true free will” by “staging] things at home”; Thomas “actively interfered with the relationship between [Kimberly] and Trevor”; and Thomas “poisoned Trevor against his mother.” Thomas submits the chancellor erroneously used these incorrect findings to support several of the Albright factors to favor Kimberly, including the factors related to parental skills, moral fitness, preference of the child, and parental interference.
¶ 10. As the Mississippi Supreme Court has stated on numerous occasions, absent an abuse of discretion, an appellate court will uphold a chancellor’s decision. Brekeen v. Brekeen, 880 So.2d 280, 283 (¶ 4) (Miss.2004). This Court will not disturb the factual findings of the chancellor unless the findings are manifestly wrong or clearly erroneous. Jerome v. Stroud, 689 So.2d 755, 757 (Miss.1997). “However, where the chancellor improperly considers and applies the Albright factors, an appel *757 late court is obliged to find the chancellor in error.” Hollon v. Hollon, 784 So.2d 943, 946 (¶ 11) (Miss.2001) (citing Stroud, 689 So.2d at 757). We recognize that the supreme court has continuously held that in all child-custody cases the polestar consideration shall remain the best interest and welfare of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The Albright factors, which are used to determine child custody based on the best interest of the child, include:
1) age, health and sex of the child; 2) determination of the parent that had the continuity of care prior to the separation; 3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; 4) the employment of the parent and responsibilities of that employment; 5) physical and mental health and age of the parents; 6) emotional ties of parent and child; 7) moral fitness of parents; 8) the home, school[,] and community record of the child; 9) the preference of the child at the age sufficient to express a preference by law; 10) stability of home environment and employment of each parent; and 11) other factors relevant to the parent-child relationship.
Hollon, 784 So.2d at 947 (¶ 12) (citing Albright, 437 So.2d at 1005).
¶ 11. At trial, the chancellor heard testimony from the parties and witnesses, as well as Dr. William Gasparrini, a psychologist, and Dr. Jule Miller, a psychiatrist.[2] In examining the chancellor’s findings and analysis of the Albright factors, the record reflects that the chancellor found the factor of age favored neither parents, since Trevor was twelve-years old at the time of the trial. After examining the following factors, the chancellor found these factors favored neither party: health of the child; age of the parents; willingness and ability to provide care; continuity of care; home, school, and community record.
¶ 12. Thomas argues the chancellor abused his discretion by failing to find that the factors of willingness and ability to provide care and Trevor’s home, school, and community record favored Thomas. According to Thomas, there was overwhelming testimony presented that showed Thomas’s involvement in Trevor’s school and extracurricular activities. Thomas points out that the chancellor possessed awareness that, due to her work schedule, Kimberly is not able to participate in Trevor’s school and extracurricular activities to the extent that Thomas participates. Thomas argues that he remains extremely involved in Trevor’s home, school, and community, and he is both willing and able to provide for Trevor; thus, this factor should favor him.
¶ 13. The chancellor found both parents actively participated in Trevor’s life, but the chancellor noted that Kimberly’s work schedule did not provide her with the necessary time to be as active as Thomas. However, noting that both parents exhibited a willingness and ability to provide care, albeit with differing work-schedule demands, we cannot find that the chancellor committed manifest error in determining that this factor favored neither parent.
*758 ¶ 14. Regarding the health of the parents, the chancellor noted that Kimberly suffers from ankylosing spondylitis and reactive arthritis, and she had been diagnosed with certain mental and emotional tendencies, for which she received treatment. The chancellor stated that Kimberly’s physical health “is somewhat at issue,” but he held that “Dr. Miller’s testimony was clear that after treatment, all issues as to [Kimberly’s mental health] had been resolved.” The chancellor noted that “there was really no testimony with regard to any health issues that [Thomas] had other than the substance abuse.” The chancellor acknowledged that the evidence demonstrated Thomas suffered from a drug addiction. Thus, the chancellor found the health-of-the-parents factor ultimately favored Kimberly.
¶ 15. Thomas argues that this finding was an abuse of the chancellor’s discretion and constitutes manifest error. He contends that the chancellor’s post-trial finding — neither doctor found that Kimberly possessed any mental illness that would prevent her from exercising custody or unrestricted visitation — is inaccurate. Thomas cites to Dr. Miller’s testimony, where he stated if Kimberly had continued to act inappropriately, he would not have recommended that she have custody of Trevor. Thomas submits that evidence at trial established that Kimberly has a problem with anger and hostility, and Kimberly’s emotional illnesses and alcohol use had a direct negative effect on Trevor.
¶ 16. Thomas also argues that the chancellor erroneously found that Thomas’s affidavit misrepresented Kimberly’s alcohol use, and he contends only Kimberly’s use of alcohol, not his alcohol use, had a direct negative impact on Trevor. However, the record shows that the chancellor possessed awareness that both parties used alcohol. The record also shows that Thomas previously suffered a relapse of his prescription drug abuse. We also note that Dr. Miller explained, although Kimberly had acted inappropriately in the past due to marital stress and the death of her father, she had changed emotionally. Dr. Miller opined that he did not see Kimberly as a risk to herself of Trevor, and he did not believe Kimberly would act inappropriately again. Our supreme court has held that whatever the decision, the chancellor is in the best position to determine the credibility of the witnesses. Madden v. Rhodes, 626 So.2d 608, 616 (Miss.1998). Keeping this rule in mind, and after a review of the record, we cannot say that the chancellor committed manifest error in finding that the factor of health of the parents favored Kimberly.
¶ 17. In examining the factor of continuity of care, the chancellor found that both parents shared the responsibility of raising Trevor. The chancellor also acknowledged that Trevor desired to live with Thomas, but the chancellor expressed his opinion that “Trevor’s preference is not the result of a true, free choice, but is rather the result of what [Thomas] has done at the home.” Thomas argues that the chancellor minimized the evidence favorable to Thomas in finding that the factor of continuity of care favored neither parent. Thomas claims that favorable evidence toward Thomas and testimony presented at trial, especially testimony from Trevor’s teachers, neighbors, and relatives concerning Thomas’s parenting skills, are not mentioned in the chancellor’s opinion. Thomas also asserts that Trevor has never wavered in his desire to live with his father.
¶ 18. We find the record supports the chancellor’s determination that both parents shared the responsibility of raising Trevor. We agree with Thomas’s assertion that favorable evidence exists regarding his parenting ability, but we also note *759 that favorable evidence toward Kimberly also exists, including testimony from coworkers, relatives, and Dr. Miller, showing that Kimberly was a “great parent” and “a good mother,” who provided for Trevor’s needs.
¶ 19. With regard to parenting skills, the chancellor stated that his main issue with Kimberly “was that she exposed Trevor to the arguments between her and [Thomas].” The chancellor deemed Kimberly as the disciplinarian, but he also found that Thomas “is extremely good with Trevor,” noting Thomas’s involvement in Trevor’s schoolwork and extracurricular activities. The chancellor initially found this factor favored Kimberly, stating:
[T]he key thing to me with regard to parenting skills is, knowing that [Kimberly] was damaging Trevor by getting him into the middle [of] the arguments, [Kimberly] has taken the necessary steps to learn how to better parent. While at the same time, I still see [Thomas] as playing Trevor against [Kimberly].
However, upon consideration of the post-trial motions, the chancellor ultimately determined this factor favored neither parent. Thomas argues that the evidence presented at trial, including testimony from Trevor’s teachers, the Wattses’ neighbors, Dr. Miller, and Dr. Gasparrini support Thomas’s assertions that he is an excellent parent. Thomas maintains that the record contains no comparable testimony for Kimberly; thus, the chancellor should have found that this factor favored him.
¶ 20. However, the record supports the chancellor’s findings that Kimberly recognized the damage she caused by involving Trevor in her arguments with Thomas and that Kimberly had completed the necessary steps to learn how to be a better parent. As previously stated, the record also includes favorable testimony from relatives and friends regarding Kimberly’s parenting skills. In response to Thomas’s assertions, we point out that the record is replete with instances where Thomas manipulated Trevor against Kimberly and also incited fear toward Kimberly. Accordingly, the chancellor’s finding that this factor favors neither party is supported by substantial evidence.
¶ 21. Turning to employment duties, emotional ties, and employment stability, the chancellor determined that all three of these factors favored Thomas. However, when stating his analysis of the emotional-ties factor, the chancellor cautioned that he believed this factor favored Thomas due to his finding that Thomas “has manipulated his relationship with Trevor, and he has manipulated Trevor’s relationship with [Kimberly].” As a result of the chancellor’s finding that Thomas manipulated his relationship with Trevor, and also Trevor’s relationship with Kimberly, the chancellor held that the factor of moral fitness favored Kimberly. The chancellor also repeated his finding that Thomas had actively interfered with Kimberly and Trevor’s relationship.
¶22. Regarding the chancellor’s finding as to the moral-fitness factor, Thomas argues the evidence in the record shows that Kimberly engaged in abusive, alienating conduct and attempted to manipulate Trevor. Thus, Thomas claims that the chancellor’s finding that the moral-fitness factor favored Kimberly supports his assertion that the chancellor possessed bias in favor of Kimberly. Kimberly argues, however, that the chancellor based his finding regarding moral fitness on Thomas’s manipulation of her relationship with Trevor, and also on Thomas’s admitted past behavior of stealing prescription drugs and using them. This Court is concerned with Thomas’s and Kimberly’s al *760 leged emotional manipulation of their son, Trevor, as well as placing Trevor in the middle of their arguments with one another. However, our review of the record reveals no manifest error in the chancellor’s finding regarding this factor.
¶ 23. Regarding Thomas’s claim that the chancellor possessed bias in favor of Kimberly, we find no evidence in the record to support his claim. On the contrary, the chancellor stated that he was aware of Kimberly’s reluctance “to answer straightforward questions” during the trial, and he acknowledged Kimberly’s admission that “she exposed Trevor to things to which he should not have been exposed.” As to Thomas’s suggestion that the chancellor possessed bias in favor of Kimberly, due to the fact that Kimberly’s brother worked as a substitute bailiff for the chancellor, our review of the transcript shows that this connection was announced on the record by the chancellor. The chancellor reiterated that Kimberly’s brother was not employed as the chancellor’s bailiff, but he had served as a substitute bailiff for the chancellor on occasion. Counsel for both parties agreed on the record that they had no problem with the fact that Kimberly’s brother had occasionally served as a substitute bailiff for the chancellor.
¶ 24. Additionally, nothing in the transcript supports Thomas’s assertion that the chancellor made “quantum leaps” to reach “reckless” punitive findings; our review of the testimony and evidence shows that the chancellor’s findings were supported by substantial evidence. This issue is without merit.
II. Custody
¶ 25. Thomas claims the chancellor erred in awarding joint physical and legal custody of Trevor to both Thomas and Kimberly. Thomas argues that joint physical and legal custody is inappropriate for a twelve-year old boy, and Thomas contends that he serves in a significant supporting relationship with Trevor, which Thomas maintains that Kimberly cannot provide. In support of his argument, Thomas cites to Kimberly’s hostile treatment of Thomas, including negative comments, while in the presence of Trevor. Thomas thus submits that joint physical and legal custody is not in Trevor’s best interest.
¶ 26. We note that upon filing their voluntary consent to a divorce on the ground of irreconcilable differences, both parties also voluntarily consented to the chancellor’s determination and adjudication of the issue of legal and physical custody of Trevor. See Miss.Code Ann. §§ 93-5-2(3), 93-5-24(2) (Supp.2011). Pursuant to First Amended Order for Temporary Relief filed on December 8, 2008, the chancellor arranged a specific unsupervised visitation schedule for the parties to be followed until after the trial, when a final custody arrangement would then be determined. During the period between the order for temporary relief and the trial, the parties abided by this custody arrangement wherein Kimberly was awarded alternating weekend visitation from 6:00 p.m. on Friday and continuing until 6:00 p.m. on Sunday and alternating week-night visitation, which alternated every other week, at 3:00 p.m. or the end of school and continuing until Friday morning at 8:00 a.m. or the beginning of school.
¶ 27. As previously stated, the polestar consideration in all custody cases shall remain the best interest and welfare of the child. Albright, 437 So.2d at 1005. Mississippi Code Annotated section 93-5-24(5) (Rev.2006) provides: “An award of joint physical and legal custody obligates the parties to exchange information concerning the health, education and welfare of the minor child, and unless allocated, apportioned or decreed, the parents or par *761 ties shall confer with one another in the exercise of decision-making rights, responsibilities and authority.” Additionally, the Mississippi Supreme Court cautioned in Crider v. Crider, 904 So.2d 142, 147-48 (¶ 13) (Miss.2005) as follows:
To be sure, unless the parents are capable of sharing joint custody cooperatively, it is incumbent upon a chancellor not to award joint custody. This is for the chancellor to determine as he or she is in the best position to evaluate the credibility, sincerity, capabilities!,] and intentions of the parties. The chancellor in the present case determined that because the parents had been sharing joint legal and physical custody since their separation, on their own initiative, that there was a proven willingness from both parties to cooperate. And since [the chancellor] had determined that the child needed what both parents were giving and willing to give, it would be in the child’s best interest to continue this way.
See also Phillips v. Phillips, 45 So.3d 684, 695 (¶¶ 33-34) (Miss.Ct.App.2010).
¶ 28. The chancellor, after hearing testimony from Thomas, Kimberly, and Trevor, as well as various witnesses, and considering the Albright factors, found that “joint legal custody is in Trevor’s best interest ... I also believe that joint physical custody is in Trevor’s best interest. He needs to rebuild his relationship with his mother, but he needs to maintain a strong relationship with his father.” We acknowledge “the chancellor ... must determine what is in the best interest of the child, and it is the chancellor who determines the level of commitment parents have to sharing joint custody.” Crider, 904 So.2d at 148 (¶ 15). In the present case, the chancellor was in the best position to determine whether Thomas and Kimberly followed the custody arrangement agreed upon in the First Amended Order for Temporary Relief and also whether the parties could continue to share joint custody of Trevor. We thus find no abuse of discretion in the chancellor’s determination awarding joint legal and joint physical custody of Trevor to both Kimberly and Thomas. This issue is without merit.
III. Alimony
¶ 29. Thomas next argues that the chancellor erred in awarding Kimberly alimony in the amount of $1,000 per month, in addition to one-half of all marital assets, including Thomas’s retirement. Thomas points out that Kimberly testified she needed only $500 per month in alimony. Thomas maintains that the chancellor based the alimony award in part on the chancellor’s finding of fault through Thomas’s alleged manipulation of both Trevor and the chancellor, as well as Thomas’s 2006 stint in a rehabilitation program for drug abuse. Thomas claims that the chancellor should have denied the request for an alimony award entirely based on Kimberly’s emotional abuse and attempted manipulation of Trevor.
¶ 30. The record reflects that the chancellor awarded Kimberly: one-half of an interest in Thomas’s retirement plan; one-half of the equity interest in the couple’s home;[3] ownership of the Suburban automobile; one-half of the personal property; and alimony in the amount $1,000 per month. In determining an award of alimony, the factors to be considered by the chancellor are as follows: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) *762 the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; and (12) any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).
¶ 31. In his analysis of the Armstrong factors, the chancellor stated: “I find that [Thomas] was at fault. His fault, his misconduct consisted of, first, the relapse into narcotic abuse, and then, second, his manipulation of Trevor. I also find that he manipulated me on July the 10th of 2008.” The chancellor also held that Thomas’s treatment for drug abuse caused economic hardship to the parties due to his salary dropping substantially.
¶ 32. In Driste v. Driste, 738 So.2d 763, 765-66 (¶¶ 8-9) (Miss.Ct.App.1998), this Court recognized that the Armstrong factor regarding the fault or misconduct of a party is indeed part of the criteria a chancellor should use in determining an award of alimony, even in a no-fault, or irreconcilable-differences, divorce. The Driste Court cautioned that “the chancellor should exercise discretion to restrict the evidence such that the determination of relative fault for purposes of awarding alimony does not become the equivalent of trying a contested divorce.” Id. at 766 (¶ 9).
¶ 33. In reviewing the record, we find the chancellor properly considered the Armstrong factors in his determination of the award of alimony. Contrary to Thomas’s argument, we find no indication that the factor of fault was the driving factor in establishing the award of alimony. See Patterson v. Patterson, 917 So.2d 111, 118 (¶ 18) (Miss.Ct.App.2005). The record shows that the chancellor noted Thomas’s earning capacity of $150,000 per year based on his master’s degree in nurse anesthesia, while estimating Kimberly’s earning capacity to be at best $43,000 per year. The record also shows that in ruling on the post-trial motions, the chancellor affirmed his award of alimony, reiterating that based on the Armstrong factors, Kimberly’s initial estimate of $500 per month “was not commensurate with her being maintained in a manner with which she was accustomed” and making no mention of fault. Finding no abuse of discretion, the chancellor’s award of permanent alimony in the amount of $1,000 per month will remain undisturbed. This issue is without merit.
IV. Temporary Restraining Order and Attorney’s Fees
¶ 34. Thomas argues the chancellor erroneously found that he had misled the chancellor in the affidavit submitted with Thomas’s request for a TRO. Thomas also argues that the chancellor erred by awarding Kimberly attorney’s fees she had incurred in defending against the affidavit and TRO. Thomas submits that this ruling by the chancellor was not supported by substantial evidence.
¶ 35. In his bench ruling, the chancellor found that Thomas’s affidavit accompanying his motion for a TRO “was not substantially true in material aspects. At the time that the affidavit was signed, at the time that the ex-parte order was granted, [Kimberly] was not a danger to herself and to others. And she was cer *763 tainly not a danger to Trevor.” The chancellor stated that he made this determination after the affidavit had “been tested under the fire of cross-examination in a full-blown hearing.”
¶ 36. We agree that testimony presented at trial, including Dr. Miller’s and Dr. Gasparrini’s testimonies, fail to support Thomas’s allegations that Kimberly presented a threat to Trevor’s safety. Additionally, the supreme court has stated: “[T]he [c]hancellor is vested with the responsibility to hear the evidence, assess the credibility of the witnesses, and determine ultimately what weight and worth to afford any particular aspect of the proof.” In re Extension, Enlarging of Boundaries of City of Laurel, 922 So.2d 791, 796 (¶7) (Miss.2006); Rainey v. Rainey, 205 So.2d 514, 515 (Miss.1967).
¶ 37. Thomas further contends that the chancellor erred in awarding Kimberly attorney’s fees based on her defense of the TRO, stating “where the prayer for injunction is ancillary to the main relief sought and the entire case is heard finally, and not separately on any preliminary motion to dissolve, attorney[’]s fees should not be allowed.” Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1270 (Miss.1987). We recognize that the matter of determining attorney’s fees in divorce cases is largely entrusted to the sound discretion of the trial court. McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). Attorney’s fees may only be awarded to a party who has shown an inability to pay his or her own fees. Voda v. Voda, 731 So.2d 1152, 1157 (¶29) (Miss.1999); Pacheco v. Pacheco, 770 So.2d 1007, 1012 (¶ 26) (Miss.Ct.App.2000). When awarding attorney’s fees, chancellors are instructed to make specific findings regarding the recipient’s ability to pay. Hankins v. Hankins, 729 So.2d 1283, 1286 (¶13) (Miss.1999).
¶ 38. In reviewing the transcript, we find that the parties agreed the attorney’s fees requested by both sides were reasonable and necessary. The parties then waived an analysis of the McKee factors to determine the proper amount of attorney’s fees. The chancellor found that Kimberly had incurred $30,000 in attorney’s fees and “much of that relate[d] primarily to the temporary restraining order and dealing with the consequences of that temporary restraining order.” The chancellor then proceeded to award Kimberly $15,000 in attorney’s fees, but he made no finding regarding Kimberly’s inability to pay her attorney’s fees. However, in his order denying Thomas’s post-trial motions, the chancellor later performed a McKee analysis in response to Thomas’s argument that the chancellor erred in awarding attorney’s fees to Kimberly. In performing his analysis of the McKee factors, the chancellor stated:
This court awarded [Kimberly] attorney's] fees on the basis of the [TRO] obtained by [Thomas] and “in dealing with the consequences of that [TRO].” What this court did not do was to perform a McKee analysis.
a. The relative financial ability of the parties. Each is gainfully employed. As noted in its findings relative to the award of alimony, [Thomas] is capable of earning three times what [Kimberly] earns.
b. The skill and standing of the attorney employed. There was no direct testimony on this factor. [Kimberly’s] attorney has appeared before this court on numerous occasions in complex domestic litigations.
c. The nature of the case and novelty and difficulty of the questions at issue. The nature of the case was complicated by the overwhelming effort of [Thomas] to convince the court, Tre *764 vor, Dr. Gasparrini, and Dr. Miller that [Kimberly] was abusive. That conduct still continues to this day. That it has partially succeeded with Trevor has been shown through both [Drs.] Gasparrini and Miller. That began with the voluminous affidavit and the journal of [Thomas]. It continues today. Otherwise, there was nothing novel or difficult about the case. It was time and resource consuming.
d. The degree of responsibility involved in the management of the cause. There was no testimony on this factor.
e. The time and labor required. This is reflected in the attorneyf’s] fee statement filed in this matter by counsel for [Kimberly].
f. The usual and customary charge in the community. While there was no testimony on this factor, the rate for out[-]of[-]court attorney time in this community is anywhere from $125.00 per hour to $200.00 per hour. In[-]court time runs from $150.00 an hour to $250.00 per hour.
g. The preclusion of other employment by the attorney due to the acceptance of the case. There was no testimony on this factor. The court takes notice of the number of days that it took to try this case.
After performing the McKee analysis, the chancellor stated that he found no reason to set aside the award of attorney’s fees.
¶ 39. An award of attorney’s fees must be supported by sufficient evidence for an accurate assessment of fees. See McKee, 418 So.2d at 767 (reversing and remanding award based on insufficient evidence); Powell v. Powell, 644 So.2d 269, 276 (Miss.1994) (same). Estimates may support an award in some circumstances if the estimates clearly explain “the method used in approximating the hours consumed on a case.” McKee, 418 So.2d at 767; see also Watkins v. Watkins, 748 So.2d 808, 813 (¶¶ 13-14) (Miss.Ct.App.1999).
¶ 40. We find that defending the TRO required Kimberly to incur expenses in responding to the allegations, submitting to psychiatric and psychological evaluations, and responding to the results of these evaluations, as well as examining the doctors at trial who had performed these evaluations. The Mississippi Supreme Court has allowed an award of attorney’s fees and expenses “where a party’s intentional misconduct causes the opposing party to expend time and money needlessly[.]” State v. Blenden, 748 So.2d 77, 87 (¶ 33) (Miss.1999) (citation omitted); See Mabus v. Mabus, 910 So.2d 486, 488-92 (¶¶ 7-24) (Miss.2005). Although Kimberly submitted a fee statement from her attorney, and Thomas agreed at trial that Kimberly’s submitted amount of attorney’s fees was reasonable, we find no findings by the chancellor to explain how he arrived at the specific amount of $15,000. Upon examining the fee statement from Kimberly’s attorney which was admitted into evidence, we can deduce that Kimberly incurred roughly the amount awarded to her by the chancellor. Therefore, we find no abuse of discretion in the chancellor’s award of attorney’s fees to Kimberley in the amount of $15,000.
Y. Thomas’s Journal
¶41. Thomas submits that the chancellor abused his discretion in ruling that Thomas’s journal, which Thomas’s attorney instructed him to maintain, lacked trustworthiness. Thomas argues that Kimberly introduced the journal into evidence, and Thomas claims that material facts in the journal are corroborated by his affidavit and testimony.
*765 ¶ 42. Thomas maintained a journal from November 2007 until late July 2008 wherein he would document his interactions and conversations with Kimberly. Thomas also documented conversations between himself and Trevor, and also Trevor’s comments about his mother. In his bench ruling, the chancellor determined the journal “was prepared in anticipation of litigation and, therefore, is not trustworthy.” As stated, the chancellor is vested with the responsibility to hear the evidence and determine what weight and worth to afford any particular aspect of the evidence. In re Extension, Enlarging of Boundaries of City of Laurel, 922 So.2d at 796 (¶ 7).
¶ 43. During the trial, we note that Thomas admitted he did not document events or maintain a journal until he was advised to do so by his attorney. Despite Thomas’s allegations in his journal and affidavit, Dr. Miller and Dr. Gaspar-rini testified that Kimberly did not present a threat to Trevor’s safety. Trevor also testified that he loves Kimberly and has a good relationship with his mother. After reviewing Thomas’s journal, we find no abuse of discretion in the chancellor’s determination that the journal was untrustworthy, and the record reflects that chancellor’s finding was supported by substantial evidence. Henderson, 757 So.2d at 289 (¶ 19). This issue is without merit.
VI. Post-Trial Motions
¶44. Thomas argues that the chancellor applied the wrong standard to Thomas’s post-judgment motions under Rule 59(a). Thomas also asserts the chancellor abused his discretion in his findings of fact on the Rule 59(e) motions “and failed to rule on the Motion for Modification, or alternatively, abused his discretion in failing to grant the Motion for Modification. Alternatively, the [chancellor] failed to make appropriate findings of fact and conclusions of law, as required when Thomas requested such pursuant to [Rule] 52(a).”
¶ 45. Whether or not to grant a motion for a new trial is a matter of discretion vested in the chancellor. M.R.C.P. 59(a). Additionally, “motions for relief under Rule 60(b) are generally addressed to the sound discretion of the trial court[,] and appellate review is limited to whether that discretion has been abused.” Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss.1984).
¶ 46. Thomas submits that in deciding the first amended motion under Rules 59 and 60, the chancellor applied the standard that applies to a motion for modification. In his later motions under Rule 59 and 60 to set aside, alter, and amend the final judgment, to reopen the evidence, and/or for a new trial, Thomas claimed that Kimberly continued to engage in a pattern of abusive conduct after the trial. Thomas submitted excepts from text messages sent to his phone by Trevor that appear to express Trevor’s displeasure with being in his mother’s care. Thomas also argues that the chancellor failed to address the motion for modification, claiming the evidence was sufficient to justify a change in custody. Specifically, Thomas claims that the chancellor ignored evidence that Kimberly’s conduct had an adverse impact on Trevor.
¶ 47. In ruling on Thomas’s post-trial motions, the chancellor restated that the polestar consideration in child-custody cases is the best interest of the child. The chancellor also readdressed his findings under the Albright factors. The chancellor cited to Dr. Miller’s and Dr. Gasparin-ni’s opinions and testimonies to support the finding that Kimberly did not suffer from mental illness. In support of his denial of Thomas’s post-trial motions, the chancellor cited to Dr. Gasparrini’s conclu *766 sion that Thomas attempts to influence Trevor to side with him.
¶ 48. In reviewing Thomas’s post-trial motions, the chancellor also made findings regarding attorney’s fees based on his analysis of the McKee factors. As stated, the chancellor recognized that Kimberly had incurred approximately $80,000 in attorney’s fees, finding that much of the cost resulted from her defense of the TRO filed against her by Thomas. After the trial, the chancellor determined that the affidavit provided by Thomas failed to support the TRO. In reviewing the award of attorney’s fees in light of the McKee factors, the chancellor stated in his order, which denied Thomas’s post-trial motions, that he found no reason to set aside the award of $15,000 to Kimberly for her attorney’s fees. As previously stated in our analysis of the attorney’s fees, we find no abuse of discretion in the chancellor’s decision. McKee, 418 So.2d at 767.
¶ 49. We further find that Thomas failed to present newly discovered evidence warranting relief from the final judgment. M.R.C.P. 60(b)(8). The chancellor’s order reflects that prior to and during the trial, Thomas alleged that Kimberly had made negative comments; thus, Thomas’s post-trial motions alleging negative comments fail to show a material change of circumstances. The chancellor also stated that Thomas failed to present testimony regarding any adverse effect on Trevor. Therefore, we cannot find that the chancellor abused his discretion in denying Thomas’s post-trial motions. This issue is without merit.
¶ 50. After reviewing the record, we affirm the chancellor’s judgment.
¶ 51. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. FAIR, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. RUSSELL, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, P.J.

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).

. The record reflects that the GAL did not testify at trial. During his bench ruling,. the chancellor explained that the court appointed a GAL based on Thomas's filing of the TRO. The GAL subsequently met with the parties and Trevor, and the GAL issued a report to the chancellor recommending that Thomas and Kimberly share joint legal custody of Trevor. The GAL noted that Trevor desired to live with his father, but he recommended that Trevor "should be permitted to be with both of his parents each week." The GAL also advised that both Thomas and Kimberly seek counseling and refrain from speaking negatively about the other parent in the presence of Trevor.

. The chancellor awarded ownership and possession of the home to Thomas, along with the responsibility of paying the mortgages on the home.