ISHEE, J.,
for the Court:
¶ 1. In July 2011, the Clay County Chancery Court granted Cynthia McDonald (Cindy) and Edgar McDonald Jr. (Ed) a divorce based on irreconcilable differences. The chancery court awarded Cindy $234,834 of the marital estate and Ed $277,988.60 of the marital estate. Ed was also ordered to pay alimony of $1,800 per month and $5,000 of Cindy’s attorney’s fees. Cindy now appeals, arguing the chancery court erred by (1) finding the twenty-three acres of real property were not marital property; (2) awarding her less than an equal portion of the marital assets; (3) failing to adequately provide for her health-care costs; and (4) refusing to award her full attorney’s fees. Ed *884 cross-appeals, arguing the chancery court erred by (1) excluding for equitable distribution the property that Cindy transferred to her sister; (2) awarding Cindy more than an equal portion of the marital estate; and (3) awarding Cindy attorney’s fees. Finding no error, we affirm the chancery court’s judgment.
FACTS AND PROCEDURAL HISTORY
¶2. Cindy and Ed were married on June 1, 1979. They separated in November 2006. In August 2008, Ed filed for divorce in the Clay County Chancery Court based on habitual cruel and inhuman treatment. After a trial on the merits, the chancery court found that Ed had failed to prove cruel and inhuman treatment and was, therefore, not entitled to a fault-based divorce. However, the chancery court awarded Cindy separate maintenance. Less than two weeks after separate maintenance was ordered, Ed attempted to terminate his separate-maintenance obligation. In his motion, Ed argued he had “made a good faith effort to return to the marriage and amend the marital relationship.” Cindy disputed this, and Ed’s request was denied. Ed then filed a motion to alter or amend the order denying his motion to terminate separate maintenance. Cindy responded with a motion for contempt based on Ed’s failure to pay separate maintenance. Ed’s motion was denied; however, Cindy’s motion for contempt was granted, and she was awarded $6,000. Ed appealed the decision to this Court, and we affirmed the decision of the chancery court. McDonald v. McDonald, 69 So.3d 61, 68 (¶ 18) (Miss.Ct.App.2011).
¶3. On March 19, 2010, Cindy filed a complaint for divorce based on adultery, habitual cruel and inhuman treatment, and desertion, or in the alternative, irreconcilable differences. However, the parties eventually agreed to a divorce based on irreconcilable differences. The chancellor was to decide the issues of property division and alimony.
¶ 4. During the course of the marriage, Ed was the main source of income. Cindy worked for thirteen years during the marriage. However, in 1999, Cindy was unable to continue working due to illness. Cindy suffers from multiple sclerosis and fibromyalgia. Currently, her only source of income, independent of Ed’s court-ordered support, is the $993 per month she receives in Social Security disability payments. At the time of the divorce, Ed earned approximately $115,000 per year, including his bonus.
¶ 5. Cindy testified that since the separation, she had depended on her sister, Patsy, for both financial and physical care. She and Patsy owned a rental home they inherited from their mother. They earned $840 per month from the rental home, which they split. However, in March 2010, Cindy deeded the property to Patsy. Because Cindy did not have the resources to support herself throughout the divorce process or afford her attorney’s fees, Patsy covered some of these costs. Therefore, Cindy deeded the house to Patsy as repayment.
¶ 6. At the time of the divorce, the parties had substantial assets. The parties’ marital home is currently listed with a realtor for $395,000. The house is situated on twenty-five acres of land. Ed agreed that two of the acres are attached to the house as marital property; however, he asserted that the other twenty-three acres are his separate property that he inherited. When assessing the parties’ property, the chancery court found the marital home had a value of $329,000, with $100,000 remaining on the balance of the home, thus *885 leaving $229,000 in equity. The chancery court also found the disputed twenty-three acres were not marital property.
¶ 7. The parties also had various retirement and investment accounts. While working, Cindy accrued retirement benefits in the amount of $41,585. Ed accrued a 401 (k) in the amount of $20,968; a retirement account of $33,657.94; an Executive Stock Unit Plan with a value of $95,170.93; and a Stock Discount Plan in the amount of $29,363.73. Ed also has a Bancorp-South certificate of deposit valued at $45,000. Additionally, the parties have a Dodge Ram pickup with a value of $8,500, with a loan balance of $2,272.34, and various personal property.
¶ 8. A trial was held on the matter, and the chancellor entered an opinion on May 31, 2011. After the chancellor conducted a Ferguson[1] analysis, Cindy was awarded her retirement account in the amount of $41,585; the Dodge Ram pickup valued at $8,500; personal property totaling $2,350; and sixty percent of the equity in the house when it is sold. Ed was awarded his 401(k) in the amount of $20,968; his retirement account of $33,657.94; his Executive Stock Unit Plan with a value of $95,170.93; his Stock Discount Plan in the amount of $29,363.73; personal property valued at $9,500; forty percent of the equity in the house when it is sold; and the twenty-three acres considered separate property valued at $34,500.
¶ 9. Based on the chancellor’s Armstrong[2] analysis, Cindy was awarded $1,800 per month in alimony. Ed was also required to provide Cindy with medical coverage for eighteen months. Finally, Ed was ordered to pay $5,000 in attorney’s fees to Cindy.
¶ 10. Cindy now appeals, arguing the chancery court erred by (1) finding the twenty-three acres of real property were not marital property; (2) awarding her less than an equal portion of the marital assets; (3) failing to adequately provide for her health-care costs; and (4) refusing to award her full attorney’s fees. Ed cross-appeals, arguing the chancery court erred by (1) excluding from equitable distribution the property that Cindy transferred to her sister; (2) awarding Cindy more than an equal portion of the marital estate; and (3) awarding Cindy attorney’s fees.
DISCUSSION
¶ 11. When reviewing a decision by the chancery court, we employ a limited standard of review. Williams v. Williams, 56 So.3d 1277, 1280 (¶ 12) (Miss.Ct.App.2011). “We will not disturb a chancellor’s findings unless the court was manifestly •wrong, abused its discretion^] or applied an erroneous legal standard.” Id. (citations omitted). We review question of law de novo. Broome v. Broome, 75 So.3d 1132, 1139 (¶ 19) (Miss.Ct.App.2011).
I. Nommarital Property
¶ 12. When dividing marital assets, the chancery court must first classify the property as marital property or non-marital property. Stewart v. Stewart, 864 So.2d 934, 937 (¶ 12) (Miss.2003). Marital property is defined as “any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor.” Id. (quoting Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994)). Inter vivos gifts and inheritances are considered non- *886 marital property unless they have been commingled. Everett v. Everett, 919 So.2d 242, 247 (¶ 19) (Miss.Ct.App.2005) (citing Heigle v. Heigle, 654 So.2d 895, 897 (Miss.1995)). However, “[a]ssets which are classified as nonmarital, such as inheritances, may be converted into marital assets if they are commingled with marital property or utilized for domestic purposes, absent an agreement to the contrary.” Stewart, 864 So.2d at 937 (¶ 12) (quoting Boutwell v. Boutwell, 829 So.2d 1216, 1221 (¶ 20) (Miss.2002)).
A. Twenty-Three Acres of Land Adjacent to the Marital Home
¶ 13. Cindy argues the chancery court erred by finding the twenty-three acres of land were nonmarital property and failing to distribute the land along with the other marital assets. Ed contends that the twenty-three acres were purchased with funds from his father’s estate. However, Cindy asserts there is no evidence, other than Ed’s own testimony, that the property was nonmarital. According to Cindy, the funds Ed used were from the parties’ joint bank account, and the property was titled in both names. She further argues that even if the funds were from Ed’s father’s estate, he commingled the funds when he deposited them into the parties’ joint bank account. Finally, Ed and Cindy were listed as joint tenants with the right of survivorship on the title for the twenty-three acres of land. Cindy argues that this supports her claim that the property was marital property.
¶ 14. We find that a different conclusion could have been reached regarding whether or not the funds were commingled, therefore making the twenty-three acres marital property. However, “we are restrained from substituting our own judgment for that of the chancellor, even if we disagree with his or her findings of fact and would arrive at a different conclusion.” Robinson v. Burton, 49 So.3d 660, 664 (¶ 9) (Miss.Ct.App.2010) (citation omitted). Here, there was evidence that the funds were inherited by Ed and were only deposited in the parties’ joint account to pay for the twenty-three acres of land. Furthermore, the Mississippi Supreme Court has rejected the “title theory.” Marter v. Marter, 95 So.3d 733, 738 (¶ 15) (Miss.Ct.App.2012). Therefore, in Mississippi, the determination of whether property is marital in nature “proceeds absent any presumption based on title.” Id. (quoting Pearson v. Pearson, 761 So.2d 157, 163 (¶ 16) (Miss.2000)). The fact that the twenty-three acres was titled in both names does not automatically make it marital property. Accordingly, there was sufficient evidence on which the chancery court based its conclusion. This issue is without merit.
B. Cindy’s Inherited Property
¶ 15. Although Ed agrees that the property was inherited by Cindy from her mother, he asserts the property was commingled because the rent from the property was deposited into the parties’ joint bank account. Furthermore, Ed handled all of the business-related matters regarding the property. Accordingly, Ed contends that Cindy’s deeding of the property to her sister was a wrongful dissipation of the marital estate, and the property should have been subject to equitable distribution.
¶ 16. As noted above, we will not substitute our own judgment for that of the chancellor. While we again find that a different conclusion could have been reached, the chancellor did not abuse his discretion in finding the inherited property was nonmarital despite the rent received' being placed in the parties’ joint bank account. Both parties agreed that the *887 property was inherited by Cindy and her sister; therefore, it was clearly not marital property. The chancery court found that the deposit of rent payments into the parties’ joint bank account was not sufficient to render the property commingled. We find the chancery court did not abuse its discretion in reaching this conclusion. This issue is without merit.
II. Distribution of the Marital Estate
¶ 17. Cindy argues that the chancery court erred in its application of the Ferguson factors; thus, the division of the marital property was an abuse of discretion. The entire marital estate was valued at $515,095.60. Cindy was awarded $234,834 of the marital estate. Ed was awarded $277,988.60 of the marital estate. Cindy argues that she should have also been awarded half of Ed’s employment benefits, which totaled $179,160.60.
¶ 18. First, Cindy argues the chancery court did not properly consider Ed’s fault in the breakup of the marriage. One factor the chancery court must consider when dividing marital assets is the “[e]ontribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties[,] and duration of the marriage.” Ferguson, 639 So.2d at 928. According to Cindy, Ed had sexual relations with other women and then refused to discuss any infidelity with Cindy. Although Ed never admitted to having an affair, he never denied the accusations. Cindy asserts Ed’s alleged affair should have been taken into consideration when distributing the marital estate.
¶ 19. Ed counters Cindy’s arguments by claiming the chancery court failed to consider her fault in the dissolution of the marriage. He alleges that Cindy refused to have sexual relations with him for over a year. In addition, Cindy refused to accompany Ed when he was required to entertain customers for his job.
¶ 20. Next, Cindy argues the chancery court did not properly consider Ed’s dissipation of the marital assets. Under Ferguson, the chancery court must consider “[t]he degree to which each spouse has expended, withdrawn!,] or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree[,] or otherwise.” Ferguson, 639 So.2d at 928. In 2009, Ed did, in fact, take $97,000 from the marital-asset accounts to pay for attorney’s fees.
¶ 21. Alternatively, Ed argues the chancery court did not consider Cindy’s dissipation of the marital assets. Ed claims that Cindy dissipated marital assets by transferring her ownership of certain real estate inherited from her mother to her sister. Ed claims the property had a value of $750,000.
¶ 22. The chancery court did not abuse its discretion in the distribution of marital assets. While each party’s contribution to the stability and harmony of the marriage is a factor to consider, it is not the only factor the chancery court must evaluate when distributing the marital assets. Furthermore, each party’s argument establishes that both parties were at fault for the breakup of the marriage. As the chancery court noted: “[B]oth parties are responsible for the disharmony that occurred in the family.” Therefore, the chancery court properly considered each party’s fault for the dissolution of the marriage when conducting the Ferguson analysis.
¶ 23. With regard to each party’s dissipation of assets, the chancery court properly considered both parties’ actions. The chancery court acknowledged that Ed took $97,000 out of the parties’ joint bank ac *888 count and considered this when awarding his portion of the assets. The chancery court stated: “[Ed’s] award takes into account the fact [he] withdrew approximately $97,000.00 from marital[-]asset accounts in 2009.” Although the chancery court did not find Cindy’s inherited property to be marital in nature, the chancery court did consider her transfer of the property to her sister when assessing property distribution. Accordingly, the chancery court did not err in its Ferguson analysis. This issue is without merit.
III. Alimony/Health-Care Costs
¶ 24. Cindy argues the chancery court abused its discretion by failing to provide adequate support for her substantial health-care needs. First, Cindy argues the chancery court did not properly consider her health-care costs. She contends the chancery court erred by only requiring Ed to provide health insurance for eighteen months and by only awarding $1,800 per month in alimony. She cites her substantial health-care costs and her inability to earn income as support for this argument.
¶ 25. Next, Cindy argues that the chancery court failed to consider the tax effects of the alimony award. Both her Social Security disability benefits and her monthly alimony payments are subject to taxes. However, Ed is allowed to deduct his alimony payments from his taxable income. Cindy argues that the tax consequences make the income disparity between herself and Ed even greater. Therefore, she asserts this Court should remand the matter to the chancery court for further consideration.
¶ 26. In contrast, Ed asserts the chancery court awarded Cindy too much in alimony per month. He claims that he is barely able to afford his rent each month and has been forced to file for bankruptcy. Therefore, he asks that we reverse and remand the case to the chancery court for further consideration.
¶ 27. The chancery court properly considered the relevant Armstrong factors. Although Cindy argues the chancery court did not properly consider her healthcare needs, the court acknowledged that medical coverage is necessary and that she will be forced to obtain her own health insurance after the divorce. Therefore, the chancery court ordered Ed to provide eighteen months of health insurance for Cindy. The $1,800 per month in alimony also takes into account her health-care needs. With regard to Ed’s argument, the chancery court did not err by awarding Cindy $1,800 per month in alimony. The chancery court found that Ed’s job was fairly secure, whereas Cindy has no viable prospects for increased earnings. Furthermore, Ed can continue to contribute to a retirement account, but Cindy is unable to do so. Accordingly, we find the chancery court did not abuse its discretion in its award of alimony.
IV. Attorney’s Fees
¶ 28. “[T]he matter of determining attorney[’]s fees in divorce cases is largely entrusted to the sound discretion of the [chancery] court.” McKee v. McKee, 418 So.2d 764, 767 (Miss.1982) (citation omitted). Attorney’s fees may only be awarded when the party has shown an inability to pay. Watts v. Watts, 99 So.3d 751, 763 (¶ 37) (Miss.Ct.App.2012) (citations omitted). Cindy argues the chancery court erred by only awarding her $5,000 in attorney’s fees despite her substantial costs. Evidence was presented that Cindy’s sister had to loan Cindy money to cover the attorney’s fees. Therefore, Cindy showed an inability to pay.
¶29. We find that the chancery court did not abuse its discretion in its *889 award of attorney’s fees. Although Cindy asserts that she incurred substantial attorney’s fees during the trial in this case, the bill for fees and expenses submitted to the chancery court prior to trial was for $10, 802.49. Thus, the chancery court awarded Cindy roughly half of the fees incurred as shown by the bill submitted to the court. We find this was a reasonable amount within the discretion of the chancery court. This issue is without merit.
¶ 30. THE JUDGMENT OF THE CLAY COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT/CROSS-APPELLEE AND THE APPELLEE/CROSS-APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994).

. Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993).