872 So.2d 92 (2004)
Chylanee Nicole Dixon JOHNSON, Appellant
v.
Jason Paul JOHNSON, Appellee.
No. 2002-CA-01851-COA.
Court of Appeals of Mississippi.
April 27, 2004.
*93 Stephen Travis Bailey, Tupelo, attorney for appellant.
Kimberly Drown Kitchens, Ripley, attorney for appellee.
Before McMILLIN, C.J., BRIDGES and GRIFFIS, JJ.
McMILLIN, C.J., for the Court.
¶ 1. This is an appeal from a custody determination affecting a minor child made in the course of the dissolution of the marriage of Chylanee Johnson and Jason Paul Johnson. The chancellor awarded custody of the child to the father despite a contrary recommendation by a guardian ad litem appointed to represent the interests of the child. Aggrieved with the custody award, Mrs. Johnson has perfected this appeal. In the appeal, Mrs. Johnson alleges that the chancellor's determination must be reversed because (a) the chancellor failed to adequately set out her reasons for not following the recommendation of the guardian ad litem, and (b) the chancellor abused her discretion in analyzing the proof as it applied to the Albright factors. We find no reversible error and affirm the judgment.

I.

Facts
¶ 2. The parties to this appeal are the parents of Jada Johnson, born July 15, 1997. Both before and after the birth of their child, the parties had an unstable relationship, living together some of the time, but also living separately a significant portion of the time. The parties, in approximately 1999, took up joint residence in Prentiss County, Mississippi, where they lived together until Mrs. Johnson, in January 2001, took the child and went to California, ostensibly for a visit with family members. However, as the stay in California extended, Mr. Johnson became convinced that Mrs. Johnson had no intention of returning with their daughter. Ultimately, it became impossible for him to contact his wife because her California relatives refused to disclose the whereabouts of Mrs. Johnson and Jada.
¶ 3. Mr. Johnson successfully obtained an order for temporary custody of Jada from the chancellor in Prentiss County. Afterwards, he flew to California where, with the assistance of a private investigator, he located his daughter and, being armed with the court order, obtained custody of her. Mr. Johnson then returned with Jada to Mississippi.
¶ 4. The chancellor, by order entered on her own motion, appointed a guardian ad litem for the child. Though there is no direct evidence in the record as to why the chancellor decided to do so, there were, in the pleadings, accusations of abuse, drug *94 use, and other things against both parents that, if true, could have called into question the suitability of either parent to have custody. We assume that the chancellor, in light of those accusations, decided that some independent investigation of each parent's situation beyond that produced in a courtroom setting might be helpful in resolving the custody question.
¶ 5. The guardian ad litem filed a report in which he recommended that the mother be given paramount physical custody of the child. Despite this report, the chancellor, as we have previously indicated, awarded custody to Mr. Johnson. This appeal by Mrs. Johnson followed.

II.

Failure to Follow Guardian ad Litem Recommendation
¶ 6. Mrs. Johnson contends that the appointment of a guardian ad litem in this case was mandatory under the provisions of Section 93-5-23 of the Mississippi Code stating that "when a charge of abuse and/or neglect arises in the course of a custody action," the court "shall appoint a guardian ad litem for the child...." Miss. Code Ann. § 93-5-23 (Supp.2003). She then points out that, in those situations where a guardian ad litem is mandatory, the chancellor must state with some particularity both the reasoning of the guardian ad litem as well as the basis for the chancellor's disagreement with that reasoning. In re L.D.M., 848 So.2d 181, 183(¶ 4) (Miss.2003). Mrs. Johnson advances the proposition that the chancellor did not suitably fulfill these requirements in making her decision.
¶ 7. We find this issue without merit for two reasons.
¶ 8. First, there is no indication in the record that the chancellor considered the appointment of a guardian ad litem to be mandatory based on allegations of neglect or abuse of the child. Though there were allegations of unsuitable behavior in the pleadings, there was no direct assertion of either neglect or abuse. The statute in question, Section 93-5-23, appears in all events to afford the chancellor some discretion in determining whether there is a legitimate issue of neglect or abuse even in those situations where one party elects to make such an assertion in the pleadings, since the statute uses the permissive "may" in authorizing the chancellor to invoke the investigatory arm of the Department of Human Services to look into the truth of the assertions. Miss.Code Ann. § 93-5-23 (Supp.2003). Thus, in those situations where the chancellor, in the exercise of her sound discretion, determines that a full-bore inquiry into such allegations is not required, we do not read the statute as requiring, nevertheless, the appointment of a guardian ad litem based merely on an unsubstantiated assertion found in the pleadings of one of the parties.
¶ 9. Secondly, our review of the record leaves us satisfied that the chancellor did, in fact, consider the recommendation of the guardian ad litem, including the underlying reasons offered by the guardian, and simply found herself unpersuaded by the rationale offered. The guardian's recommendation appeared to have been based largely on the guardian's belief that Mr. Johnson may have been less than truthful in assertions made to the chancellor while pursuing an emergency temporary custody order so that he could go to California and retrieve the child.
¶ 10. In the context of the issue now before us, we note that a custody determination is not intended as a reward for one parent or as punishment for the other. See Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984). Rather, it is a *95 determination that must be made on the basis of what is in the best interest of the child. Hollon v. Hollon, 784 So.2d 943, 946-47(¶ 12) (Miss.2001).
¶ 11. There is little doubt that Mr. Johnson was left in a situation where he was unable to determine the physical whereabouts of his daughter. While this Court certainly condemns any act of misrepresentation to any court in order to persuade the court to act in a certain way, we do not think Mr. Johnson's representations to the chancellor, even if it is conceded that they may have been exaggerated to some extent, were so egregious under the circumstances as to somehow render him unfit to serve as a custodial parent. Again, it must be kept in mind that it is the best interest of the child that serves as the focus in a custody determination, rather than using custody as a punishment tool for a parent whose conduct in matters not directly affecting the child's welfare may properly be the subject of judicial condemnation. There is no evidence based on our review of the record that tends to convince us that Mr. Johnson's conduct before the chancellor while pursuing an emergency custody order had any direct adverse effect on the child or that his behavior was such as to reveal some fundamental defect in his character that would render him unfit to serve as a custodial parent.
¶ 12. Secondarily, the guardian ad litem appeared concerned that Mr. Johnson had a work history of jobs that produced relatively low levels of income. The chancellor considered those concerns but noted that the family's needs appeared to have always been provided for and that Mr. Johnson's employment permitted him the flexibility to spend more time with his daughter. This Court is not aware of any authority for the proposition that the parent earning a greater income is entitled to some preference in a custody dispute based solely on that consideration.
¶ 13. Based on the chancellor's on-the-record discussion of the key points of concern of the guardian ad litem and the chancellor's own findings regarding her evaluation of their significance, we do not conclude this to be a case where the chancellor abused her discretion by simply ignoring or failing to adequately consider the guidance provided by the guardian ad litem.
¶ 14. This issue is, for the foregoing reasons, found to be without merit.

III.

The Albright Factors
¶ 15. Mrs. Johnson alternatively contends that the chancellor abused her discretion and was manifestly in error in her evaluation of the various factors now known in Mississippi jurisprudence as the "Albright factors" which, according to Mississippi Supreme Court directives, must be considered in making custody determinations. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
¶ 16. The chancellor, in her opinion, considered each of the factors, offered her analysis of the evidence relating to those factors, and then reached a conclusion as to which parent was favored under each factor. Mrs. Johnson takes issue with those findings, primarily by citing to other evidence in the record that is more favorable to her.
¶ 17. The chancellor sits as finder of fact in a child custody dispute. Rainey v. Rainey, 205 So.2d 514, 515 (Miss.1967). As such, she is vested with the responsibility to hear the evidence, assess the credibility of the witnesses, and determine ultimately what weight and worth to afford any particular aspect of the proof. Id. The *96 findings of fact so made are entitled to deference on appeal and may be disturbed only if the appellate court is satisfied that the chancellor was manifestly in error in making them. Id.
¶ 18. In this case, the chancellor's findings are supported by evidence in the record, which the chancellor evidently found to be persuasive. Our own review of the record does not convince us that the chancellor was plainly wrong in deciding which portion of the proof she found probative and thereafter relying on that evidence to draw her conclusions as to what award of custody would best serve the interests of the child.
¶ 19. For that reason, we find any assertion that the Albright factors were not properly considered to be without merit.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF PRENTISS COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.