# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CT-00041-SCT

*JENNIFER CARTER*

*v.*

*JOSH CARTER*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/20/2013 |
| TRIAL JUDGE: | HON. JOHN S. GRANT, III |
| TRIAL COURT ATTORNEYS: | ANSELM J. McLAURIN |
| | SHANA D. FONDREN |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | GLENN S. SWARTZFAGER |
| | JAMES CHRISTOPHER WALKER |
| ATTORNEY FOR APPELLEE: | ANSELM J. McLAURIN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 12/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1. In 2011, Jennifer Carter and Josh Carter divorced, and Jennifer was granted legal and physical custody of their daughter Delaney Carter. A year later, Josh filed a motion for modification of custody. The Rankin County Chancery Court awarded Josh physical custody of Delaney, with the parties sharing joint legal custody. Jennifer appealed, and the Mississippi Court of Appeals affirmed the judgment of the chancery court. Jennifer seeks review of that judgment on certiorari, arguing that the chancellor erred in not appointing a

guardian ad litem, because allegations of neglect arose during the course of the proceedings, making such appointment mandatory. Because there were no charges of neglect or abuse as required under Mississippi Code Section 93-5-23, and because insufficient proof was adduced of abuse or neglect, the judgments of the Court of Appeals and the Rankin County Chancery Court are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2.     Josh Carter and Jennifer Carter obtained a divorce in June 2011 in the Rankin County Chancery Court. The chancery court awarded Jennifer legal and physical custody of their four-year-old daughter Delaney Carter. After the divorce, Jennifer changed jobs three times. She then moved into a mobile home near Lumberton, Mississippi, two hours south of the Carters' original home. On May 23, 2012, Jennifer sent a letter to the clerk of the Chancery Court of Rankin County, advising the clerk of her new address.

¶3.     Two days later, Josh filed a motion to modify Jennifer's custody of Delaney. Josh's motion stated only that "certain material changes in circumstances have occurred which have had and will likely continue to have an adverse impact upon her [Delaney]. Such changes in circumstances justify a modification of the former judgment to award the custody of the minor child unto Plaintiff [Josh]." Josh did not specify what these material changes in circumstances were.

¶4.     In response to Josh's motion, Jennifer filed a motion to dismiss, or in the alternative, a motion for a more definite statement or for a continuance to conduct discovery. She argued

2

that there had been no material change in circumstances and that Josh had failed to state any facts to support his motion. The chancellor denied Jennifer's motion.

¶5.    Josh filed a motion under Rule 34 of the Mississippi Rules of Civil Procedure to inspect and take pictures of Jennifer's new residence. Josh did not provide the chancery court with a basis for this request. The chancellor entered an order authorizing a Rule 34 inspection. But the chancellor found that it was not appropriate for Josh or his attorney to inspect Jennifer's property. So the chancellor appointed Heather M. Aby ("the inspector"), who conducted the investigation of Jennifer's property on May 31, 2013.

¶6.    The trial was conducted over two days, July 18, 2013, and September 11, 2013. Although there was some initial confusion, the chancery court and both parties agreed that the inspector had not been appointed as a guardian ad litem but rather as an investigator for the trial court, even though she had styled her report as the "Report of Guardian Ad Litem."[1]

¶7.    The inspector testified that the mobile home, yard, and cabin were messy, unclean, and unkempt. She noted that the grass was uncut and that trash, debris, and appliances were scattered throughout the property. In the inspector's opinion, Jennifer's residence was unsafe

---

[1] For example, in acknowledging the inspector at trial, the chancellor stated "I believe she is the guardian ad litem in this case and has been duly appointed by the Court?" In response, Josh's attorney stated that the inspector "was not actually formally appointed as ad litem." The chancellor then restated the scope of her appointment, stating that the inspector "was appointed as an observer . . . someone to make a report . . . ." The inspector likewise admitted that she was "[n]ot a guardian ad litem, and that she was appointed to inspect Jennifer's property and submit a report." The inspector told the chancellor that she had titled her report "Report of Guardian Ad Litem" only out of habit, as she had served as guardian ad litem in many cases.

3

for a six-year-old child. The inspector's photographs of Jennifer's residence, along with the one-page report, were entered into evidence.

¶8.     The deposition of Dr. Naznin Dixit, taken approximately a year earlier, on October 10, 2012, also was admitted into evidence on the first day of the hearing at the request of Josh. Dr. Dixit was a pediatric endocrinologist who had diagnosed Delaney as having a failure to thrive, meaning that Delaney was not growing as she should, and she was in the third percentile nationally in weight and height. Though Delaney was small for her age, Dr. Dixit concluded that her test results were within a normal range and that she was healthy. Dr. Dixit denied there were any signs of abuse or neglect.

¶9.     By the second day of the trial, nearly two months later, some improvements had been made to Jennifer's property. Jennifer and Delaney no longer were living in the mobile home. They had taken up residence in an adjacent cabin on the property, which by that time had been mostly renovated and had passed county inspection. She admitted that most of the other improvements to the yard had been made in the week before trial.

¶10.    The chancellor rendered his decision from the bench. The chancellor referred to the inspector's report and described Jennifer's residence as a "squallerly and dangerous, shocking environment . . .[that it was] shocking, outrageous that any child should have to live in conditions such as that . . . [and that it was a] per se adverse influence . . . ." He continued to describe the residence as an "unsafe condition, dangerous to a child, unkempt, junky, unhealthy, deplorable, almost uninhabitable, and shocking." The chancellor entered a judgment of modification, finding that Josh had made a showing of a material change in

4

circumstances which adversely affected Delaney and that, after considering all of the *Albright*[2] factors, the factors "slightly" favored Josh. The chancellor relieved Josh of his child-support obligations and ordered Jennifer to pay Josh $118 per month in child support.

¶11.    On September 25, 2013, Jennifer filed a motion for reconsideration and/or in the alternative a new trial under Rule 59 of the Mississippi Rules of Civil Procedure. Jennifer retained new counsel and filed a supplement to her motion on November 16, 2013. The chancellor denied the motion, and Jennifer appealed.

¶12.    In her appeal, Jennifer raised a single issue: whether the chancery court had erred in failing to appointing a guardian ad litem when it was mandatory because of what she argued were Josh's allegations of neglect. ***Carter v. Carter***, 2015 WL 5813572, *2 (Miss. Ct. App. Oct. 6, 2015). Believing the issue to be one of first impression, the Court of Appeals adopted a new threshold standard for the appointment of a guardian ad litem by requiring that the allegations of neglect "must amount to an allegation that the child was a neglected child as defined by the Youth Court Law." ***Carter***, 2015 WL 5813572, at *5. Under this standard, the Court of Appeals concluded that the chancellor did not err by failing to appoint a guardian

---

[2] ***Albright v. Albright***, 437 So. 2d 1003 (Miss. 1983)(listing factors to be considered by courts in making custody decisions). The chancellor found that the following factors favored Josh: health of the child, best parenting skills and willingness and capacity to provide primary child care, employment, moral fitness (only "very slightly"), home record of the child, and other relevant factors. The chancellor found the following factors favored Jennifer: sex of the child and school record of the child. The chancellor found that the following favored neither party: age of the child, continuity of care prior to separation, physical and mental health and age of the parents, emotional ties of the parent and child, and community record of the child. The preference of the child was not an issue since Delaney was younger than twelve.

ad litem and affirmed the chancery court's judgment. *Id.* This Court granted Jennifer's petition for writ of certiorari.

¶13.   We address three issues in this case: first, whether the issue of the mandatory appointment of a guardian ad litem is properly before this Court, as Jennifer failed to raise the issue in a timely-filed Rule 59 motion for a new trial; second, whether the appointment of a guardian ad litem was mandatory in this case; finally, whether the new standard announced by the Court of Appeals for the appointment of a guardian ad litem in child-custody cases concerning allegations of abuse and/or neglect is contrary to law.

## DISCUSSION

I.      **Whether the issue regarding the requirement for the mandatory appointment of a guardian ad litem is properly before this Court, as Jennifer failed to raise the issue in a timely-filed Rule 59 motion for a new trial.**

¶14.   After oral arguments in this case, and at the request of this Court, the parties filed supplemental briefing on whether the requirement for a *sua sponte* appointment of a guardian ad litem could be raised for the first time as a supplement to a timely filed Rule 59 motion for new trial.[3]

¶15.   The chancery court entered a judgment of modification on September 20, 2013. Five days later, on September 25, 2013, Jennifer, having hired new counsel, filed a "Motion for a Reconsideration and/or in the Alternative a New Trial Pursuant to Rule 59 of the

---

[3] Jennifer asserts this issue as whether the appointment of the guardian ad litem was mandatory. The Court of Appeals reworded her issue as whether the chancellor erred in not appointing a guardian ad litem, "*sua sponte,*" to investigate what she argues were Josh's allegations of neglect. *Carter v. Carter*, 2015 WL 5813572, at *1 (Miss. Ct. App. Oct. 6, 2015).

[Mississippi Rules of Civil Procedure]" On November 26, 2013–*sixty-seven days after* the entry of judgment for modification–Jennifer filed a *Supplemental Motion* for a Reconsideration and/or in the Alternative a New Trial Pursuant to Rule 59 of the [Mississippi Rules of Civil Procedure]. For the first time, Jennifer argued that Josh had made allegations of neglect during trial and that the chancellor had erred in failing to appoint a guardian ad litem when it was mandatory under Mississippi Code Section 93-5-23. There is no evidence in the record that Josh's counsel objected to Jennifer filing this supplemental motion. In fact, at oral arguments, Josh's counsel admitted that he did not make any objections.

¶16.    On December 9, 2013, the chancery court found "that the Supplemental Motion of Defendant is found not well taken and the same is overruled, dismissed and held for naught." So the chancellor considered Jennifer's supplemental motion claiming that the appointment of a guardian ad litem was mandatory.

¶17.    Jennifer appealed on January 6, 2014. Though not asserted as a separate issue on cross-appeal, Josh nonetheless argued in the appellee's brief that the issue of mandatory appointment of a guardian ad litem was procedurally barred. The Court of Appeals affirmed the judgment of the chancery court, without commenting on whether the issue of the mandatory appointment of a guardian ad litem was procedurally barred. *Carter*, 2015 WL 5813572, at *6. Presiding Judge Irving's dissent addressed the issue and stated that the issue was "procedurally alive and [was] properly before us." *Carter*, 2015 WL 5813572, at *8 (Irving, P.J., dissenting).

7

¶18.     "A motion for a new trial shall be filed not later than *ten* days after the entry of judgment." M.R.C.P. 59(b) (emphasis added). The Advisory Committee note to the rule states that "[t]he trial court has *no authority or discretion to extend the 10-day time period*. M.R.C.P. 6(b)." (Emphasis added.) The ten-day limit on filing a motion for a new trial is an inflexible time standard that the trial judge has no discretion to enlarge. *See* **Telford v. Aloway**, 530 So. 2d 179, 180-81 (Miss. 1988).

¶19.     In several cases prior to the adoption of the Mississippi Rules of Civil Procedure, this Court addressed the merits of arguments that were first raised as a supplement to a party's motion for a new trial, without considering whether those arguments were properly before the Court.  *See, e.g.*, **City of Laurel v. Hutto**, 220 Miss. 253, 265, 70 So. 2d 605 (1954) (noting that the appellant had filed a supplement to its motion for a new trial); **Davis v. Ross**, 45 So. 2d 273, 273 (Miss. 1950) (stating that "[t]he first time appellee sought to inject rescission into the case was by an amendment to her motion for a new trial[,]" an argument which this Court considered).

¶20.     After adopting the Mississippi Rules of Civil Procedure, this Court noted that Rule 59 does not contain any provision allowing an amendment. **Brake v. Speed**, 605 So. 2d 28, 37 (Miss. 1992). This Court in **Brake** reasoned that the absence of such a provision was "not an oversight." *Id.* The Mississippi Rules of Civil Procedure are based on the Federal Rules of Civil Procedure. *Id.* The Court in **Brake** noted that, in the process of amending the federal rules, an early draft existed which would have allowed a party to amend its motion for new trial. But that draft was eliminated. *Id.* (internal citations omitted). After considering the fact

that the proposed amendment to the federal rules was struck, this Court, in dicta, stated that the trial court did not abuse its discretion in considering only the original motion and in refusing the "plaintiff's *ore tenus* request for relief on issues not contained in the original motion." *Id.*

¶21. At oral argument, Jennifer cited ***Watts v. Watts***, 99 So. 3d 751 (Miss. Ct. App. 2012), to support her position that this appeal is properly before this Court. After the entry of final judgment, the father in ***Watts*** filed a Rule 59(e) motion. *Id.* at 756. On July 13, 2009, he filed an amended Rule 59(e) motion. *Id.* Nearly *four months* later, he filed an amended and supplemental motion under Rule 59(e) and Rule 60. *Id.* On December 7, 2009, he filed a motion for findings of fact and conclusions of law regarding the Rule 59 and Rule 60 motions. *Id.* After a hearing, the chancellor denied the motions and the father appealed. *Id.* It is clear that the chancellor considered the merits of the post-trial motions, as did the Court of Appeals. *Id.* at 759, 765-66. But it is not clear from the face of the opinion if a new issue was raised for the first time in the supplemental motions. *See also **All American Processing, Inc. v. Ruckdeschel***, 75 So. 3d 59 (Miss. Ct. App. 2011) (noting only that the party had filed a supplement to its motion for a new trial). So, under Mississippi law, it appears that our courts have considered a supplement to a timely filed Rule 59 motion, though the issue as to its permissibility has yet to be raised.

¶22. Federal Rule of Civil Procedure 59 states that "a motion for a new trial must be filed no later than 28 days after the entry of judgment." F.R.C.P. 59(b). While the federal rule has

9

been amended to change the time period from ten days to twenty-eight days, the mandatory filing language is the same.

¶23. The Fifth Circuit Court of Appeals has affirmed district courts' decisions not to consider new grounds raised in supplements to timely filed Rule 59 motions. Yet, as this Court noted in **Brake**, the Fifth Circuit consistently has held that the decision was in the discretion of the district-court judge to consider or not consider additional grounds. In **Pruett v. Marshall**, the plaintiff filed a motion for a new trial within the ten-day period under Rule 59(b). **Pruett v. Marshall**, 283 F.2d 436, 439 (5th Cir. 1960). Five weeks later, the plaintiff filed an amended motion containing five new grounds for a new trial. **Id.** at 439-40. Though the amendment was denied, the Fifth Circuit noted that "the trial court should be able in the exercise of its sound discretion, to allow a tardy amendment stating an additional ground for a new trial." **Id.** at 440.

¶24. In **Abbott v. Equity Group, Inc.**, 2 F.3d 613 (5th Cir. 1993), the appellant filed a motion for leave to amend its motion for new trial under Rule 59, asserting for the first time an issue that had not been raised before. **Id.** at 628. The Fifth Circuit held that the trial court had abused its discretion in denying the motion for leave to supplement. **Id.** at 628-30. *See also* **Knapp v. Dow Corning Corp.**, 941 F.2d 1336, 1338 (5th Cir. 1991) (stating that "[w]hile we adhere to a liberal standard respecting amendments to a timely-filed Rule 59 motion, we are without jurisdiction to entertain the appeal of Knapp's tardy submission").[4]

---

[4] The lack of jurisdiction resulted from Knapp's "tardy" Rule 59 motion for a new trial. After change of counsel and a motion for new trial under Rule 60(a), the district court denied both motions.

¶25.    The Eleventh Circuit Court of Appeals also allows amendments to timely filed Rule 59 motions. In ***Pate v. Seaboard R.R.***, 819 F.2d 1074 (11th Cir. 1987), the appellee argued that the circuit court was "without power to grant a new trial based on an alleged error because the appellants did not raise the issue in their original motions for a new trial." ***Id.*** at 1083. In ***Pate***, "almost *seven months* after the original new trial motions, the . . . appellants filed an amended motion for new trial . . . ." ***Id.*** "The appellee argued that the district court should not have considered the new allegation of error because . . . this ground was not presented within the mandatory and jurisdictional time constraints of Fed. R. Civ. P. 59(b)." ***Id.*** at 1083-84.

¶26.    The Eleventh Circuit recognized that this was an issue of first impression: "whether a district court, in ruling on a timely motion for a new trial, may properly consider a new ground of alleged error raised for the first time in an amended motion filed after the ten day period in Fed. R. Civ. P. 59(b) but before the district court has ruled on the motion." ***Id.*** at 1084. The Eleventh Circuit concluded that a district court has the discretion to allow an amendment to a timely motion for a new trial and may consider new grounds raised in the amended motion. ***Id.***

¶27.    The Eleventh Circuit explained its rationale, noting that Rule 59(d) allows a judge to consider additional grounds for relief:

> Once the finality of the judgment has been suspended by the filing of a timely motion for new trial, there is little justification for a rule that dictates that a district court may not, in the interest of justice, decide to consider a new ground alleged by the movant as warranting a new trial. As Professor Kaplan pointed out, any alleged justification becomes particularly specious in light of

11

the fact that Rule 59(d) clearly permits a district court to consider informal suggestions from the movant as to additional grounds for relief.

*Id.* at 1085.

¶28.    So "the district court may consider amendments to a party's original timely motion for a new trial as 'a reason not stated in the motion' under Fed. R. Civ. P. 59(d), and . . . the other requirements of Rule 59(d) apply to the court's consideration of the newly raised grounds." *Id.* at 1086. The Eleventh Circuit concluded that the district court did not abuse its discretion in allowing the appellant to raise a new ground for relief in the amended motion for a new trial. But the Eleventh Circuit also noted that the district court also would have been justified in refusing to permit the amendment. *Id.*

¶29.    Other federal circuit courts have taken the same approach as the Eleventh Circuit. *See Roy v. Volkswagenwerk Aktiengesellschaft*, 781 F.2d 670-71 (9th Cir. 1985) (finding that, even if the later document were an amendment advancing a new ground, it would be permitted). *Pogue v. Int'l Indus., Inc.*, 524 F.2d 342, 344 (6th Cir. 1975) (holding that the "district court may in its discretion consider the issues raised in the amended motion for new trial even though it was not filed within the time provided for by the rule where, as here, the original motion for a new trial was filed within the ten-day rule time period" under Rule 59).

¶30.    The issue of whether the appointment of a guardian ad litem was mandatory is properly before this Court. Jennifer filed her original motion for a new trial within the ten-day period under Rule 59. She then filed an unopposed supplement to that motion sixty-seven days later, raising a new ground not contained in the original motion for new trial. Today, we adopt the approach of the Fifth and Eleventh Circuits–which is consistent with this

Court's reasoning in *Brake*–allowing judges in their discretion to consider new grounds raised in amendments to timely filed Rule 59 motions for new trial.

¶31.    Jennifer also alleges that, since Josh failed to object to her supplemental motion, the issue of timeliness has been waived. We agree. In *Wilburn v. Wilburn*, this Court found that the appellant's motion for reconsideration was untimely, but that there was no evidence the appellee either objected or responded to the appellant's untimely motion for reconsideration. *Wilburn v. Wilburn*, 991 So. 2d 1185, 1191 (Miss. 2008). So this Court concluded that the appellee was procedurally barred from raising the timeliness issue for the first time on appeal. *Id. See also Walker v. May*, 166 So. 3d 613, 615 (Miss. Ct. App. 2015) (stating that "[h]owever, as May did not object to the timeliness of the motion, in deference to the supreme court's holding in *Wilburn*, we will briefly address the merits."). This Court has stated:

> We have held in a host of cases that the failure to make a proper objection waives any claim of error on appeal, a few illustrative ones being: *Moore v. Moore*, 558 So. 2d 834, 838 (Miss. 1990); *Griffin v. State*, 557 So. 2d 542, 557 (Miss. 1990); *Jackson v. State*, 551 So. 2d 132, 147 (Miss. 1989); *Livingston v. State*, 525 So. 2d 1300, 1302 (Miss. 1988); *Jackson Yellow Cab Co. v. Alexander*, 246 Miss. 268, 278 (1963).

*Nichols v. Munn*, 565 So. 2d 1132, 1136-37 (Miss. 1990).

¶32.    Josh argues that Jennifer's failure to file a timely Rule 59 motion rendered this Court without jurisdiction and that a question of jurisdiction may be raised for the first time on appeal. However, while it is true that the "timely filing of a notice of appeal in a civil case is a jurisdictional requirement," Jennifer timely filed the motion for new trial on  September 25, 2013. *Bowles v. Russell*, 551 U.S. 205, 214, 127 S. Ct. 2360, 2366, 168 L. Ed. 2d 96

13

(2007). Following the trial court's dismissal of the motion, she timely filed an appeal with this Court on January 6, 2014. Therefore, the supplement to a timely filed motion for new trial did not affect this Court's jurisdiction in this case.

¶33.   Federal circuit courts have taken a similar position as this Court did in *Wilburn*. The Sixth Circuit has held that Rules 6(b) and 59(e) are "claim-processing rules that provide[] . . . [the nonmovant] with a forfeitable affirmative defense." *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 475-76 (6th Cir. 2007) (relying on *Eberhart v. United States*, 546 U.S. 12, 17-18, 126 S. Ct. 403, 406-07, 163 L. Ed. 2d 14 (2005); *Kontrick v. Ryan*, 540 U.S. 443, 456, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004)). Since the district court had ruled on the movant's Rule 59(e) motion before the nonmovant raised the issue of untimeliness, the Sixth Circuit found that the nonmovant had forfeited its timeliness defense. *Id.* at 476.

¶34.   The Seventh Circuit has held that, as in Bankruptcy Rule 4004, the time limits in Rules 50(b) and 59(b) are claim-processing rules, promulgated by the Supreme Court, and thus "do not create or withdraw federal jurisdiction."). *Blue v. Int'l Bhd. of Elec. Workers Local Union 159*, 676 F.3d 579, 584-85 (7th Cir. 2012). "To be sure," the Seventh Circuit stated, "the district court in this case violated [Rule] 6 by extending [the movant's] time to file its post-trial motions beyond 28 days . . . ." *Id.* But the Seventh Circuit found that "this error has no jurisdictional consequences, and the district court was within its discretion to consider the motion." *Id.* at 585. Even the Third Circuit–which has adopted a strict approach to supplements to timely filed Rule 59 motions–has held the same. *See Lizardo v. United States*, 619 F.3d 273, 277-78 (3d Cir. 2010) ("Because Rule 59(e) is a claim-processing rule,

14

an objection based on the untimeliness of a Rule 59(e) motion may be forfeited."). *See also*

***In re Onecast Media, Inc.***, 439 F.3d 558, 562-63 (9th Cir. 2006) (finding the same for Rule 58).

¶35.    Thus, since Josh did not make any objection to Jennifer filing the supplemental motion sixty-seven days after the entry of judgment, the issue of timeliness has been waived. This Court may consider the merits of this appeal.

### II.    Whether the appointment of the guardian ad litem was mandatory in this case.

¶36.    Jennifer asserts that allegations of neglect were made against her during the course of the proceedings, and thus she claims it was error for the chancellor not to appoint a guardian ad litem when such was mandatory.[5] In a change-of-child-custody proceeding, the best interest of the child is the polestar consideration. ***Robison v. Lanford***, 841 So. 2d 1119, 1126 (Miss. 2003). This Court has held that "the importance of guardian ad litem appointments in child custody proceedings cannot be overemphasized." ***Id.***

### A. Standard of Review

¶37.    This Court employs a limited standard of review in child-custody cases and will "affirm findings of fact by chancellors . . . when they are supported by substantial evidence unless the chancellor abused her discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." ***Borden v. Borden***, 167 So. 3d 238, 241 (Miss. 2014).

---

[5] While Jennifer claims that *allegations* of neglect trigger the mandatory appointment of a guardian ad litem, the relevant statute, Mississippi Code Section 93-5-23 refers to "charges of abuse and/or neglect" as being the trigger for the mandatory appointment of a guardian ad litem. Since the statute does not use the terms interchangeably, we also avoid using the terms interchangeably.

Additionally, "findings of fact made by a chancellor may not be set aside or disturbed upon appeal if they are supported by substantial, credible evidence." ***Marascalco v. Marascalco***, 445 So. 2d 1380, 1382 (Miss. 1984).

### B. Factual Analysis

#### 1. Josh did not charge Jennifer with abuse or neglect in his pleadings.

¶38.    Josh did not make explicit charges of abuse or neglect in his pleadings. His motion stated only that "certain material changes in circumstances have occurred which have had and will likely continue to have an adverse impact upon her [Delaney]. Such changes in circumstances justify a modification of the former judgment to award the custody of the minor child unto Plaintiff [Josh]." Josh also did not specify any facts to support his claim that a material change in circumstances had occurred. So, based only on the pleadings, we disagree with Jennifer that Josh charged Jennifer with neglecting Delaney.

#### 2. The record does not show that Delaney was an abused and/or neglected child.

¶39.    Despite the lack of specific charges of abuse or neglect in the pleadings, Jennifer argues that allegations of neglect arose during the course of proceedings. As a result, Jennifer argues that the chancellor was required to appointed a guardian ad litem, since it was clear from the evidence adduced at trial that Josh was alleging Jennifer had neglected Delaney.[6]

---

[6] Josh argues that this issue has been waived because at one point during the pretrial proceedings the chancellor asked if he should appoint a guardian ad litem, but both parties agreed it was not necessary. But this discussion is not part of the record, and "[t]his Court will consider only those matters that actually appear in the record and does not rely on mere assertions in briefs." ***Touchstone v. Touchstone***, 682 So. 2d 374, 380 (Miss. 1996).

Since nearly two months had passed from the first day to the second day of the trial, Jennifer argues that the chancellor should have appointed a guardian ad litem during this interim period. Specifically, Jennifer cites the inspector's report and testimony about Delaney's living conditions, and she also cites the questions Josh's counsel asked of Dr. Dixit, which showed he was trying to prove Jennifer was neglecting Delaney. But the record does not support Jennifer's claim that appointment of a guardian ad litem was mandatory.

### i.     The Inspector's Report and Testimony

¶40.    While it is clear from the inspector's report that Jennifer's residence was not an ideal living condition for Delaney, the report does not show that Delaney was abused or neglected. The inspector did state that she would not consider Jennifer's residence "a safe environment for a minor child." But the inspector stated that her report was focused on the living conditions of Delaney which she reported as messy, cluttered, and unclean. The inspector stated that she had not observed any roaches, rats, or feces in the mobile home. At the time the inspector surveyed Jennifer's property, Jennifer resided in a mobile home. Inside the mobile home, the inspector noted the ceiling was water damaged. She also saw an exposed wire hanging from a light fixture surrounded by more water damage. She further observed that there were dishes in the sink, but she did not know whether they were clean or dirty. But Jennifer did not have a washing machine, dryer, or a dishwasher in her mobile home, which explained why there were dishes in the sink, since she used the sink to wash and dry her dishes.

¶41. Outside the mobile home, the inspector noted that Jennifer's yard was littered with garbage, overgrown weeds, and uncut grass. She documented that Jennifer had placed a car tire on the roof of the mobile home to prevent the roof from blowing off during strong wind storms. The inspector also noticed a sharp-edged fan blade from an old car lying in the yard, along with old appliances. The inspector further found an old toddler bed sitting in the yard, but she acknowledged that it could be used as a flower bed, which was common in rural areas. The rest of the inspector's report does not reveal any signs of neglect. Rather, it shows that the residence was not suitable for a minor child.

¶42. Directly adjacent to the mobile home was what Jennifer called her "cabin." At the time of the inspection, the cabin had not yet been completed. This cabin was to be Jennifer's and Delaney's home once the improvements were completed. The inspector disagreed with Jennifer's designation of this dwelling as a cabin, stating that it was "clearly not a cabin; it [was] a shed or utility shed." The inspector expressed concern that if there was a fire, then there would be only one way out, through the front door. However, the cabin did contain many small windows that could be used for escape. The inspector also noted that trash and debris had collected on the front porch of the shed. Like the mobile home, the inspector expressed concerns about a minor child living in Jennifer's "shed." The inspector, though, had not entered the cabin herself, but made the report based on the photos her husband took. The inspector also admitted that one photograph showed insulation being installed in the cabin, which one would expect to see in a residence and not in a shed.

¶43. But by the time of the hearing, the cabin had been completed and was fully furnished. It had been approved by the county as a liveable and taxable residence and had passed a home inspection. Jennifer's grass was cut, and she had turned the old toddler bed into a flower garden. Jennifer testified that she was planning to get rid of the mobile home. Jennifer admitted that most of the issues with the yard (uncut grass, trash, appliances, etc.) were taken care of the week of the hearing.

¶44. We conclude that the record does not support Jennifer's claim that the inspector's testimony amounted to charges of neglect.

### ii. Dr. Dixit's Deposition Testimony

¶45. Jennifer also argues that the chancellor should have appointed a guardian ad litem to investigate what she maintains were allegations by Josh that she had neglected Delaney's medical and nutritional needs. For example, on one occasion, Josh testified that when he picked up Delaney, she had a fever. Jennifer had told Josh that she had in fact taken Delaney to the doctor, and the doctor advised her to keep Delaney's temperature in check. But when Josh took Delaney to the emergency room, she was diagnosed with strep throat that had advanced to scarlet fever. Josh also asked questions about a stye on Delaney's eye that lasted for a few months. Jennifer cites the questions asked by Josh's counsel of Dr. Dixit. Jennifer argues that these questions were tailored to show that Jennifer was neglecting Delaney.[7]

---

[7] For example, at the deposition Dr. Dixit was asked "what is meant by the term 'nonorganic failure to thrive?'" Dr. Dixit answered it could be caused by *parental neglect* or by a lack of nutrition. (Emphasis added.) Counsel for Josh asked if Dr. Dixit had "an opinion as to whether . . . [Delaney's] failure to thrive . . . [was] nonorganic?" Dr. Dixit responded, "[n]ot from my evaluation at the time." Josh's counsel continued to ask whether Delaney "was getting proper nutrition" and how nutrition related to Delaney's failure to

¶46.	The testimony elicited from Dr. Dixit reveals that Delaney was not neglected. Dr. Dixit previously had diagnosed Delaney with failure to thrive, which meant she was in the third percentile of height and below the third percentile in weight among her age group. During the deposition, Josh's counsel asked Dr. Dixit questions about Jennifer's home conditions and whether the lack of attention to Delaney's nutrition may have caused her to lose weight. It was Josh's position at the hearing that Delaney gained weight when she visited him, but that she would lose that weight once she went back to Jennifer.

¶47.	Dr. Dixit, however, noted that Josh's method of weighing Delaney was unreliable. Dr. Dixit testified that she diagnosed Delaney with failure to thrive based solely on her weight relative to other children her age. Dr. Dixit stated she could not find any medical reason for the weight loss. Dr. Dixit did state that poor nutrition can be a contributing factor, but there was no evidence at the time of her examination that Delaney was receiving poor nutrition. In fact, the inspector's testimony and photographs revealed that Jennifer's kitchen was fully stocked with food such as bread, eggs, juice, lettuce, cheese, and fresh tomatoes.

¶48.	Dr. Dixit further testified that Delaney appeared to be gaining weight at a steady pace. She also noted that Delaney had been born prematurely and that both Jennifer and Josh were shorter than average. Because Delaney was born prematurely, she was supposed to report for annual checkups. But Delaney missed or was late to many of these checkups. Most

---

thrive. Josh's counsel also asked Dr. Dixit if Delaney's weight loss had caused Dr. Dixit "any concern with regard to your failure to thrive?" "Would you agree with me that improper nutrition can be a contributing factor to a failure to thrive with a child?" "Would you term that to be neglect if a child is not receiving the proper amount of calories?" Dr. Dixit repeatedly denied that neglect or abuse were a concern when she examined Delaney.

importantly, when asked if there were any signs of *abuse or neglect* of Delaney, Dr. Dixit answered, "No." So this undermines Jennifer's argument that the chancellor should have appointed a GAL *sua sponte* based on Dr. Dixit's deposition testimony, since Dr. Dixit disavowed any notion that Delaney was being neglected.

¶49. Thus, neither the inspector's report nor Dr. Dixit's testimony supports Jennifer's contention that the judge should have appointed a guardian ad litem based on allegations of neglect. Dr. Dixit expressly rejected the notion that Delaney was abused or neglected. What's more, Jennifer's residence had passed an inspection by the Department of Human Services.

### C. *Legal Analysis*

¶50. In child-custody cases where abuse and/or neglect are raised, the chancellor's decision to appoint a guardian ad litem may be mandatory or discretionary.[8] The appointment is mandatory where the allegations of abuse and/or neglect rise to the level of a "charge of abuse and/or neglect," and in those cases "the court shall appoint a guardian ad litem for the child as provided under Section 43-21-121, who shall be an attorney." Miss. Code Ann. § 93-5-23 (Rev. 2013); *see also* **Robison v. Lanford**, 841 So. 2d 1119, 1126 (Miss. 2003). In these situations the chancellor is required to appoint a guardian ad litem, whether the parties requested a guardian ad litem or not. ***J.C. v. Adoption of Minor Child Named Herein***, 797 So. 2d 209, 214 (Miss. 2001).

---

[8]Where allegations of physical or sexual abuse are raised in a child-custody proceeding, the chancellor may, in lieu of appointing a guardian ad litem,"on its own motion, grant a continuance . . . until such allegation[s] [have] been investigated by the Department of Human Services." Miss. Code. Ann. § 93-5-23 (Rev. 2013).

¶51.    However, under Mississippi Code Section 93-5-23, the chancellor is provided discretion to determine if issues of abuse or neglect have sufficient factual basis to support the appointment of a guardian ad litem. A Court of Appeals opinion provides persuasive authority on this issue. As correctly noted by the Court of Appeals, "The statute . . . appears in all events to afford the chancellor some discretion in determining whether there is a legitimate issue of neglect or abuse even in those situations where one party elects to make such an assertion in the pleadings." ***Johnson v. Johnson***, 872 So. 2d 92, 94 (Miss. Ct. App. 2004).

¶52.    The statute should not be read "as requiring . . . the appointment of a guardian ad litem based merely on an unsubstantiated assertion found in the pleadings of one of the parties." ***Id.***; *see also **Collins v. Collins***, 20 So. 3d 683, 693 (Miss. Ct. App. 2008). So some situations grant the chancellor the discretion to decide if a full investigation is necessary. ***Id.***

¶53.    Considering the discretion chancellors have in deciding whether legitimate allegations of abuse and/or neglect exist, Jennifer's claim fails for two reasons. First, the chancellor was not required to appoint a guardian ad litem, because Josh's allegations did not rise to the level of charges of abuse or neglect. Second, the appointment of a guardian ad litem was not mandatory here because the record does not show any proof was introduced supporting the proposition that Delaney was an abused and/or neglected child. The main issues Josh raised to show that a material change in circumstances had occurred involved (1) the conditions of Jennifer's residence and (2) Delaney's health and care. But neither was argued nor was sufficient proof adduced to support a charge of abuse or neglect requiring the chancellor to

22

appoint a guardian ad litem under Section 93-5-23 of the Mississippi Code. Rather, they were used to show that there had been a material change in circumstances that *adversely affected* Delaney's welfare.

¶54. The chancellor here appointed the inspector for a specific, limited purpose, and that was to investigate Jennifer's home in response to Josh's Rule 34 inspection request. Further, the record does not support that Delaney was being neglected. Thus, the chancellor did not abuse his discretion in failing to appoint a guardian ad litem.

    **III.    Whether the new standard announced by the Court of Appeals for the appointment of a guardian ad litem in child-custody cases concerning allegations of abuse and/or neglect is contrary to law.**

¶55. Jennifer argues that the standard espoused by the Court of Appeals is contrary to this Court's precedent and also creates an overly strict standard. In its analysis as to whether the chancellor should have appointed a guardian ad litem *sua sponte*, the Court of Appeals noted that "[o]ur analysis of this issue is made more difficult because our supreme court has not elaborated on what sort of allegations are required, or when or how those allegations must be made, in order to make the appointment of a guardian ad litem mandatory." ***Carter***, 2015 WL 5813572, at *4, ¶ 16. The Court of Appeals then reasoned that, since this Court "has always predicated the guardian-ad-litem requirement on the Mississippi Youth Court Law and related statutes, we look there for guidance." ***Id.*** at *4, ¶ 17.

¶56. The Court of Appeals then discussed the Mississippi Youth Court Law and related statutes and concluded that allegations of neglect must rise to an allegation that the child was neglected as defined under the Youth Court Law:

23

> We conclude that since the requirement of appointing a guardian ad litem in chancery cases derives from an exception to the youth court's jurisdiction over abused or neglected children, to trigger the guardian-ad-litem requirement, the allegations of neglect must be of sufficient severity such that, if proven, they would have triggered the youth court's jurisdiction had there not already been proceedings in the chancery court. In other words, they must amount to an allegation that the child was a neglected child as defined by the Youth Court Law.

*Id.* at *5, ¶ 18.

¶57.    Jennifer argues that the Court of Appeals' standard of requiring allegations, if proven, to reach the level of conferring jurisdiction on the youth court, creates an overly strict standard. She also claims that the Court of Appeals' interpretation could lead to absurd results. She maintains that "all one need to do to avoid the appointment of a guardian ad litem in a case is make a naked assertion that there has been a material change in circumstances adverse to the child's best interest, and then wait until the hearing to present evidence that there has been abuse or neglect."

¶58.    Jennifer's concerns are unfounded. First, we agree with the rationale of the Court of Appeals that, while there are allegations in custody-modification proceedings that the custodial parent may be having an adverse effect on the child, there are some situations where such allegations do not rise to the level of a charge of neglect:

> Neglect is difficult to define and could arguably be present, to some degree, in mundane allegations of imperfect parenting that should not demand investigation by a guardian ad litem. Jennifer's implicit argument that any suggestion of neglect requires the appointment of a guardian ad litem would amount to a de facto rule that a guardian ad litem must be appointed in most custody disputes.

*Carter*, 2015 WL 5813572, at *5.

24

¶59.     Until now, neither this Court nor the Court of Appeals has held that "the allegations of neglect must be of sufficient severity . . . [to] have triggered the youth court's jurisdiction." *Id.* However, this issue is not as complicated or novel as the Court of Appeals suggests. This Court's precedent, the statutory language, and the statutory scheme found in Section 93-5-23 of the Mississippi Code provide the necessary guidance to the trial court for the appointment of a guardian ad litem. The statute requires the appointment of a guardian ad litem only in specific situations. Section 93-5-23 states that "when a charge of abuse and/or neglect arises in the course of a custody action . . . court shall appoint a guardian ad litem for the child as provided under *Section 43-21-121* . . . ." Section 43-21-121(1)(e) likewise states that "the youth court shall appoint a guardian ad litem for the child . . .[i]n every case involving a[] . . . *neglected child which results in a judicial proceeding . . . .*" Miss. Code Ann. 43-21-121(1)(e) (Rev. 2015) (emphasis added). In determining whether the child is neglected, a chancellor may, but is not required to, refer to the definition of "neglected child" found in Section 43-21-105(l) of the Mississippi Code. *See supra* ¶ 36.

¶60.     Our cases successfully have used this statutory scheme in addressing issues of neglect and the appointment of a GAL. The Court of Appeals has cited Mississippi Code Section 93-5-23 to support the proposition that the "appointment of a GAL is mandatory where there are allegations of abuse or neglect." *Lowrey v. Simmons*, 186 So. 3d 907, 913 (Miss. Ct. App. 2015). To determine whether neglect legitimately exists in a case, Section 93-5-23 "afford[s] the chancellor some discretion in determining whether there is a legitimate issue of neglect or abuse" when such is alleged in the pleadings. *Johnson*, 872 So. 2d at 94 (*see also Collins*,

25

20 So. 3d at 693). In an appeal from youth court, the Court of Appeals relied on Section 43-21-105(l)(i)-(iv), the definition of "neglect," to find that the children were "not being provided the 'proper and necessary care or support . . . or other care necessary for [their] well-being.'" *In re S.*, 47 So. 3d 715 (Miss. Ct. App. 2010) (quoting Miss. Code Ann. § 43-21-105(l)(i)).

¶61.    Thus, the Court of Appeals' decision is overruled to the extent it announces a new standard requiring the mandatory appointment of a guardian ad litem in child-custody proceedings.

## CONCLUSION

¶62.    We affirm the judgment of the Court of Appeals and the judgment of the Rankin County Chancery Court.

¶63.    **AFFIRMED**.

**RANDOLPH, P.J., COLEMAN AND BEAM, JJ., CONCUR. LAMAR, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KING, J. MAXWELL, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

¶64.    I dissent with respect. I disagree with the majority's holding that no charges of neglect were raised in this case. The record plainly discloses that such charges did arise during the trial and their presence required the chancellor to appoint a guardian *ad litem* pursuant to Mississippi Code Section 93-5-23 (Rev. 2013). I agree with the majority's holding that, because Josh Carter failed to object in the trial court to Jennifer Carter's late filing of the

26

supplemental motion for a new trial that raised this issue, he is procedurally barred from raising the issue of timeliness on appeal. But because Josh Carter's argument is procedurally barred, it is unnecessary for the Court to determine the issue of whether a trial court may consider a new ground for relief raised in a supplemental motion under Rule 59 of the Mississippi Rules of Civil Procedure.

¶65.    In a child custody case, the best interest of the child is the polestar consideration. *Robison v. Lanford*, 841 So. 2d 1119, 1122 (Miss. 2003). Mississippi Code Section 93-5-23 provides that: "The court may investigate, hear and make a determination in a custody action when a charge of abuse and/or neglect arises in the course of a custody action as provided in Section 43-21-151, and in such cases the court shall appoint a guardian ad litem for the child as provided under Section 43-21-121, who shall be an attorney." Miss. Code Ann. § 93-5-23 (Rev. 2013). This Court has expressed that "[t]he importance of guardian ad litem appointments in child custody proceedings cannot be overemphasized." *Robison*, 841 So. 2d at 1126. Indeed, when charges of neglect arise in a child custody action, appointment of a guardian *ad litem* is mandatory. Miss. Code Ann. § 93-5-23; *Robison*, 841 So. 2d at 1126. This Court will reverse the decision of a chancellor when that decision is manifestly wrong or the chancellor applied an incorrect legal standard. *Id.* at 1122.

¶66.    Josh Carter filed his motion seeking to modify custody of his six-year-old daughter Delaney Carter based on a material change in circumstances.[9] Josh Carter alleged no facts

---

[9] In custody modification actions, "the prerequisites [are] (1) proving a material change in circumstances which adversely affects the welfare of the child and (2) finding that the best interest of the child requires the change of custody." *Brocato v. Brocato*, 731 So. 2d 1138, 1141 (Miss. 1999) (quoting *Wright v. Stanley*, 700 So. 2d 274, 280-81 (Miss. 1997)).

in his motion that could have constituted a material change in circumstances. But at the trial it became clear that the basis for Josh Carter's motion was his contention that Delaney's mother, Jennifer Carter, had not provided a safe, clean home for Delaney, and that the mother had not provided the child adequate medical care, resulting in Delaney's medical diagnosis of failure to thrive. These were charges of neglect. Repeatedly, throughout the trial, the parties and the chancellor recognized that the father was trying to prove neglect. The father offered extensive testimony that Delaney was not receiving proper medical care and that the mother repeatedly had skipped dental and doctor's appointments and had failed on several occasions to obtain medical treatment for Delaney when she was ill. Additionally, Josh Carter attempted to prove that Jennifer Carter had neglected to provide adequate nutrition for Delaney. Josh Carter questioned Dr. Dixit extensively about her diagnosis of failure to thrive in an attempt to show that Delaney's condition was attributable to the mother's negligent care. The inspector's report bolstered Josh Carter's allegations of neglect, concluding that "[t]he yard surrounding the mobile home was not a safe place for a child with car parts, trash, dirty blankets, bottles, old appliances, pipes lying around . . . [and] the inside of the trailer was also generally not safe for a minor child with water leaks with mold, dirty clothes, dirty and clean dishes everywhere, no air condition[ing] running." Josh Carter testified that he was "terrified" that Delaney was not receiving the care she needed. And Jennifer Carter

---

The best interest of the child is determined with reference to the factors in *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983). *Brocato*, 731 So. 2d at 1141.

recognized in her testimony that the basis of Josh Carter's modification action was his charge that she had failed to care for Delaney adequately.

¶67. In his ruling, the chancellor stated that Josh Carter alleged that Delaney was not being properly cared for and found that Jennifer Carter's placement of Delaney in unsafe conditions constituted a material change in circumstances that triggered an *Albright* analysis. The chancellor described the mobile home in which Jennifer had lived with Delaney for a year as "squallerly and dangerous, shocking . . . unsafe . . . dangerous to a child, unkempt, junky, unhealthy, deplorable, almost uninhabitable." The chancellor found that Delaney had been kept in these conditions for more than a year, during which time she had suffered numerous respiratory infections. The chancellor stated that "it is a per se adverse influence to this little girl's best interest to live in that kind of environment." And in the *Albright* analysis the chancellor took into account Josh Carter's testimony that Jennifer Carter had not provided Delaney with proper medical care, finding that the father had a better ability to assure that Delaney received proper health care.

¶68. The majority finds that a charge of neglect did not arise in this case. But instead of analyzing whether charges of neglect arose, the majority erroneously relies on its conclusion that neglect was not proven to find that no guardian *ad litem* was required. This analysis is incorrect, because it confuses a *charge* of neglect with *proof* of neglect. Section 93-5-23 does not require that neglect must be proven before requiring the appointment of a guardian *ad litem* is required; rather, a guardian *ad litem* must be appointed when "a charge of . . . neglect arises." Miss. Code Ann. § 93-5-23. While, as the majority reasons, the chancellor has

29

discretion to decline to appoint a guardian *ad litem* when faced with nothing more than an unsubstantiated assertion of neglect in the pleadings, ***Johnson v. Johnson***, 872 So. 2d 92, 94 (Miss. Ct. App. 2004), in this case, neglect was a legitimate and fundamental issue at the trial. Moreover, the fact that Josh Carter sought a change in custody due to a material change in circumstances that adversely affected Delaney did not relieve the chancellor of his duty to appoint a guardian *ad litem*; Section 93-5-23 contemplates that a charge of neglect may arise during child custody proceedings. The statute specifically entrusts chancellors with the duty to recognize and appropriately address neglect charges that arise in this context.

¶69.    It is manifest from Josh Carter's testimony, the inspector's report, and Josh Carter's questioning of Dr. Dixit at her deposition that a charge of neglect was present in this case. The basis of Josh Carter's modification argument was that Jennifer Carter had neglected Delaney. The chancellor's findings reflect his recognition of Josh Carter's allegation that Jennifer Carter had provided an unsafe home and insufficient medical care for Delaney. The chancellor erred by failing to order the appointment of a guardian *ad litem* to represent Delaney's interests. "The appointment of a guardian ad litem allows for the child to be represented and for the child's voice to be heard by the court through an independent party." ***Robison***, 841 So. 2d at 1126. In this case, despite Josh Carter's charges that his daughter was neglected, her voice never was heard because no guardian *ad litem* was appointed. I would reverse and remand for the appointment of a guardian *ad litem*, followed by a new trial.

**DICKINSON, P.J., AND KING, J., JOIN THIS OPINION.**